UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| BOSTON SOCIETY OF THE NEW JERUSALEM, INCORPORATED, BOSTONVIEW CORPORATION, EDWARD MACKENZIE, and THOMAS KENNEDY, | ) ) ) ) ) ) | |
| Plaintiffs and Counterdefendants, | ) ) | CIVIL ACTION NO. 05-CV-10494-WGY |
| v. | ) ) | |
| GREAT AMERICAN INSURANCE COMPANY, | ) ) ) | |
| Defendant and Counterplaintiff. | ) ) ) | |

## AMENDED ANSWER AND COUNTERCLAIM FOR DECLARATORY JUDGMENT

## AMENDED ANSWER

As its amended answer to the Complaint by Plaintiffs/Counterdefendants, Boston Society of the New Jerusalem, Incorporated ("Church"), Bostonview Corporation ("Bostonview"), Edward MacKenzie ("MacKenzie") and Thomas Kennedy ("Kennedy") (collectively, "Plaintiffs"), Defendant/Counterplaintiff, Great American Insurance Company ("Great American"), states as follows:

### Introduction

1.     Great American admits that Plaintiffs purport to bring this action for breach of their insurance agreement and for bad faith, but denies that any of Plaintiffs' claims have merit, and denies that Plaintiffs are entitled to any relief, whatsoever. Great American denies all remaining allegations in Paragraph 1.

2.     Great American admits that Plaintiffs were sued on or about February 27, 2004 in the United States District Court for the District of Massachusetts and that it declined coverage for that suit. Great American denies all remaining allegations of Paragraph 2.

3.     Great American is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 3.

4.     The allegations of Paragraph 4 consist of Plaintiffs' summary of the content of an Order entered by the United States District Court for the District of Massachusetts attached to Plaintiffs' Complaint as Exhibit I. Great American admits the authenticity of Exhibit I, but denies the remaining allegations of Paragraph 4.

5.     Great American admits that the underlying plaintiffs in the Federal Lawsuit filed a new complaint against Plaintiffs in Massachusetts state court, and that the state court later dismissed those claims finding, in part, that Plaintiffs lack standing. Great American denies that the state court lawsuit asserted "virtually the same claims," and denies any remaining allegations of Paragraph 5.

6.     The allegations of Paragraph 6 consist of Plaintiffs' erroneous summary and characterizations of positions taken by Great American, both orally and in writing–for example, in some of the Exhibits attached to Plaintiffs' Complaint. Great American therefore denies the allegations of Paragraph 6.

7.     Great American denies the allegations of Paragraph 7 except that Great American admits that the General Convention of the New Jerusalem in the United States of America, Inc. ("General Convention") is an independent voluntary association of Swedenborgian Churches to which the Church used to belong.

8.     Great American admits that it agreed to reimburse Plaintiffs for the Costs of Defense they incurred in the State Lawsuit that were covered under the Great American Policy, subject to a reservation of all of Great American's rights, including the right to recoup amounts paid to Plaintiffs to the extent it is later determined that there was no coverage for the State Lawsuit, but denies all remaining allegations of Paragraph 8.     Further answering, Great American states that Plaintiffs refused reimbursement of their Costs of Defense in the State Lawsuit on that basis.

9.     Denied.

10.    Great American admits that the Attorney General served a Civil Investigative Demand ("CID") seeking the production of documents and other information from the Church, but denies all remaining allegations of Paragraph 10.

11.    Great American admits that the Attorney General filed a complaint against the Church and moved for the entry of a Consent Judgment. Great American further admits that on or about June 16, 2004, the court in which the Attorney General's complaint was filed entered a Consent Judgment attached as Exhibit L to Plaintiffs' Complaint that did not contain any findings of wrongdoing. Great American denies the remaining allegations of Paragraph 11.

12.    Great American is without knowledge or information sufficient to form a belief as to the truth of the allegations concerning the costs incurred by Plaintiffs in responding to the Attorney General's Action. Great American admits that it agreed to reimburse Plaintiffs for the Costs of Defense incurred after the Attorney General filed a Claim against them in June 2004, but has not agreed to reimburse Plaintiffs for other costs not covered under the Great American Policy. Great American denies any remaining allegations of Paragraph 12.

13.    Denied.

3

14.     Denied.

## Parties

15.     Admitted.

16.     Great American admits that Bostonview Corporation is a corporation located at 140 Bowdoin St., Boston, Massachusetts. Great American is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 16.

17.     Great American admits that Plaintiff Edward MacKenzie is a citizen of the Commonwealth of Massachusetts, but is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 17.

18.     Great American admits that Plaintiff Thomas Kennedy is a citizen of the Commonwealth of Massachusetts, but is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 18.

19.     Admitted.

## Factual Background

### i.     Insurance Policy

20.     Great American admits that it issued a Non-Profit Organization Executive Protection and Employment Practices Liability Insurance Policy ("Policy") to the Church and Bostonview for the Policy Period 11/04/2003 to 11/04/2004, and that a portion of the Policy is attached to the Complaint as Exhibit A. Great American denies that the remaining allegations of paragraph 20 are a fair or comprehensive description of the provisions of the Policy, and denies any remaining allegations of Paragraph 20.

### ii.     Leadership Change at the Church

4

21.    Great American is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 21.

22.    Great American admits that a lawsuit against the Church, Bostonview, Edward MacKenzie and Thomas Kennedy was filed by George Chapin, the General Convention, and the Massachusetts Association of the New Jerusalem (Swedenborgian) ("Association") in Boston on or about February 27, 2004. Great American is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 22.

### iii.    Great American's Disclaimer of Coverage of the Federal Lawsuit

23.    Great American is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 23.

24.    Great American admits that it received an Accord Notice and accompanying documents from USI/Hastings-Tapley Insurance Agency, Inc. that was sent on March 2nd, 2004, and which referenced the Federal Lawsuit. Great American is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 24.

25.    Great American admits that, on March 25, 2004, it sent a letter to USI/Hastings Tapley Insurance Agency, Inc. that is attached as Exhibit D to Plaintiffs' Complaint, and that Plaintiffs have quoted some of the language appearing in that letter. Great American denies any remaining allegations of Paragraph 25.

26.    Denied.

27.    Denied.

28.    Denied.

5

29.    GAIC denies the allegations in the first sentence of this Paragraph.    The second sentence asserts legal conclusions to which no response is required.  To the extent that a response to the assertions in the second sentence is required, GAIC denies the allegations in this sentence.

30.    GAIC admits that the Insureds provided it with certain legal invoices of Edwards & Angell LLP and Todd & Weld LLP, legal counsel respectively to the Church and Bostonview and to Mr. McKenzie and Mr. Kennedy in the Federal Lawsuit.  GAIC is without knowledge or information sufficient to form a belief as to the truth of the remaining assertions in the first sentence of this Paragraph.    GAIC admits the allegations in the second sentence of this Paragraph.

31.    Admitted.

32.    Great American admits that Plaintiffs sent and Great American received a letter dated June 9, 2004 that is attached to the Complaint as Exhibit F.  Great American denies the remaining allegations of Paragraph 32.

33.    Great American admits that it requested additional materials from the Church and Bostonview, and that copies of certain materials were provided to Great American.  Great American is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 33.

34.    Great American admits that counsel for Edward MacKenzie and Thomas Kennedy sent, and it received, a copy of a letter dated September 10, 2004 attached to the Complaint as Exhibit G.  Great American denies any remaining allegations of Paragraph 34.

35.    Great American admits that it sent the letter dated December 15, 2004 attached to the Complaint as Exhibit H.  Great American denies any remaining allegations of paragraph 35.

### iv.  The Federal Lawsuit

36.    Great American is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 36.

37.    Great American admits that the District Court entered an order dated July 20, 2004 that is attached to Plaintiffs' Complaint as Exhibit I.  Great American denies any remaining allegations of paragraph 37.

### v.  The State Lawsuit

38.    Great American admits that the General Convention, the Association and George Chapin commenced an action against Plaintiffs in the Superior Court Department of the Trial Court, County of Suffolk, Massachusetts, on or about August 4, 2004 by filing a document styled Amended Complaint, a copy of which (without exhibits) is attached to Plaintiffs' Complaint as Exhibit J.  Great American denies any remaining allegations of Paragraph 38.

39.    Great American admits that it received the letter attached to Plaintiffs' Complaint as Exhibit G.  Great American denies any remaining allegations of Paragraph 39.

40.    Great American admits that the State Court entered a Memorandum of Decision on December 7, 2004, a copy of which is attached to Plaintiffs' Complaint as Exhibit K.  Great American is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 40.

### vi.  Great American's Agreement To Cover At Least Some Of The Defense Costs Arising From The State Lawsuit

41.    Great American admits that it sent the letter dated December 15, 2004 that is attached to Plaintiffs' Complaint as Exhibit H.  Great American denies any remaining allegations of Paragraph 41.

42.    Denied.

### vii.    No Reasonable Basis To Accept Coverage Of The State Lawsuit But To Deny Coverage Of The Federal Lawsuit

43.    Denied.

44.    Great American admits that the letter attached to the Plaintiffs' Complaint as Exhibit H is genuine, but denies the remaining allegations of Paragraph 44 and specifically denies that Plaintiffs have fairly or comprehensively described the contents of that letter.

### viii.    Attorney General's Action

45.    Great American is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 45.

46.    Great American is without knowledge or information sufficient to form a belief as to the scope of the Civil Investigative Demand served upon the Church by the Attorney General in 2003.  Great American denies the remaining allegations of Paragraph 46.

47.    Great American is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 47.

48.    Great American admits that a copy of the Consent Judgment entered by the Superior Court Department of the Trial Court, County of Suffolk, Commonwealth of Massachusetts, is attached to Plaintiffs' Complaint as Exhibit L.  Great American is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 48.

49.    Great American is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 49.

50.    Great American admits that, on or about June 14, 2004, the Attorney General filed a complaint in the Superior Court Department of the Trial Court, County of Suffolk,

Commonwealth of Massachusetts, a copy of which is attached to Plaintiff's Complaint as Exhibit M. Great American is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 50.

### ix.    Great American's Disclaimer Of Coverage Of Most Defense Costs Arising From The Attorney General's Action

51.    Great American admits that it received the letter dated December 9, 2004 that is attached as Exhibit N to Plaintiffs' Complaint. Great American denies any remaining allegations of Paragraph 51.

52.    Great American admits that Plaintiffs have quoted some of the language of the Policy, but deny that the allegations of 52 fairly or comprehensively describe the provisions of the Policy bearing on the meaning of the word Claim, as used in the Policy. Great American denies the remaining allegations of Paragraph 52.

53.    Denied.

54.    Great American admits that it sent the letter dated January 28, 2005 attached to Plaintiffs' Complaint as Exhibit O, but denies that the allegations in Paragraph 54 fairly or comprehensively set forth the positions it took in that letter. Great American denies any remaining allegations of Paragraph 54.

55.    Denied.

### Count I

(Breach of Contract)

56.    Great American repeats and realleges its responses to Paragraphs 1 through 55, inclusive, as if those responses were fully set forth herein.

9

57.    Great American admits that it has certain contractual obligations to Plaintiffs under the Policy. Further answering, Great American states that it has met and performed all of its obligations under the terms of the Policy.

58.    Denied.

59.    Denied.

## Count II

(Breach of the Implied Covenant of Good Faith and Fair Dealing)

60.    Great American repeats its responses to the allegations in Paragraph 1 through 59, inclusive, as if those responses were fully set fourth herein.

61.    Great American admits that it has certain contractual obligations to Plaintiffs under the Policy. Further answering, Great American states that it has met and performed all of its obligations under the terms of the Policy.

62.    The allegations of Paragraph 62 set forth a legal conclusion to which no answer is required. To the extent paragraph 62 sets forth allegations of fact, Great American denies those allegations.

63.    Denied.

64.    Denied.

## Count III

(The Violation of G.L. c.93A and G.L. c.176D)

65.    Great American repeats its responses to the allegations in Paragraphs 1 through 64, inclusive, as if those responses were fully set forth herein.

66.    Great American admits that it has certain contractual obligations to Plaintiffs under the Policy.  Further answering, Great American states that it has met and performed all of its obligations under the terms of the Policy.

67.    Great American admits that it received the letter dated January 12, 2005 attached to Plaintiffs' Complaint as Exhibit P.  Great American is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 67.

68.    Denied.

69.    Denied.

70.    Denied.

71.    Denied.

72.    Denied.

## First Affirmative Defense

Plaintiffs have failed to state a claim upon which relief may be granted.

## Second Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, by one or more of the following provisions of Section IV. Exclusions of the Policy, which provide, in pertinent part, as follows:

"This Policy does not apply to any **Claim** made against any **Insured**:

A.    brought about or contributed to in fact by: (1) any **Insured** gaining any profit, advantage or remuneration to which the **Insured** was not legally entitled; or (2) the fraudulent, dishonest or criminal acts of any **Insured**;  however, the **Wrongful Act** of an **Insured Person** shall not be imputed to any other **Insured Person** for the purpose of determining the applicability of this exclusion;

*****

H.    by or for the benefit of the **Organization** . . . or any person or entity which succeeds to the interest of the **Organization** or a **Subsidiary**;

11

*****

I.      for any actual or alleged liability of any **Insured** under any contract or
agreement, express or implied, written or oral, except for employment related
obligations which would have attached absent such contract or agreement;"

## Third Affirmative Defense

Plaintiffs are not entitled to coverage under the Policy issued by Great American to the

extent that any **Claim** against them was founded upon conduct taken other than in a capacity as

an officer or director of the Church or Bostonview.

## Fourth Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, by the doctrine of unclean hands.

## Fifth Affirmative Defense

Plaintiffs' claims are barred to the extent they seek reimbursement of **Costs of Defense**

that are not reasonable, that are attributable to claims not covered by the Great American Policy,

that were incurred on behalf of persons who are not **Insureds** under the Policy, or were incurred

in the defense of matters that do not constitute **Claims** under the Policy.

**WHEREFORE**, Great American prays that this Court enter judgment in its favor and

against Plaintiffs, and each of them, on each and every count of their Complaint in this action,

award Great American its costs, including attorneys' fees, and grant Great American such other

and further relief as the Court deems just and equitable.

## COUNTERCLAIM FOR DECLARATORY JUDGMENT

Defendant/Counterplaintiff, Great American Insurance Company ("Great American"), pursuant to Rule 13 of the Federal Rules of Civil Procedure, brings this counterclaim for declaratory judgment against Plaintiffs/Counterdefendants Boston Society of the New Jerusalem ("Church"), Bostonview Corporation ("Bostonview"), Edward MacKenzie ("Mackenzie"), and Thomas Kennedy ("Kennedy") (collectively, "Plaintiffs").

## INTRODUCTION

1.      Plaintiffs filed a complaint against Great American seeking damages pursuant to a dispute about insurance coverage under a Non-Profit Organization Executive Protection and Employment Practices Liability Insurance Policy (the "Policy") Great American issued to the Church. Plaintiffs alleged that Great American breached certain contractual obligations under the Policy and its duty of good faith and fair dealing, and also violated Mass. G.L. c. 176D, section 3(9) and Mass. G.L. c.93A, sections 2 and 9, because it did not agree to provide Plaintiffs a defense in three underlying legal proceedings.

2.      The Church is a 186-year-old congregation formerly affiliated with churches that follow the teachings of Emanuel Swedenborg. Bostonview is a corporation that owns a $30 million building that houses the Church and approximately 30 residential apartment units that generate over $1.2 million in annual revenue for the Church. Bostonview's sole shareholder is the Church. MacKenzie and Kennedy are two individuals with histories of alleged criminal and fraudulent activities who have held various positions of authority in the Church and Bostonview beginning in 2003.

3.      Plaintiffs allege that Great American owed them a duty to defend against three legal proceedings. First, Plaintiffs allege Great American owed them a duty to defend against a lawsuit (the "Chapin Federal Lawsuit") brought jointly on behalf of the Church by three parties: : Church member George Chapin; the General Convention of the New Jerusalem in the United States of America, Inc., the national denomination of churches that follow the teachings of Swedenborg; and the Massachusetts Association of the New Jerusalem (Swedenborgian), an association of Swedenborgian churches to which the Church previously belonged (collectively, "the Underlying Plaintiffs"). The Underlying Plaintiffs filed the Chapin Federal Lawsuit in the United States District Court for the District of Massachusetts, which ultimately dismissed the federal claims and declined to exercise jurisdiction over the state claims. Second, Plaintiffs allege Great American owed them a duty to defend against a substantially similar lawsuit (the "Chapin State Lawsuit") filed by the same Underlying Plaintiffs in the Superior Court for the Commonwealth of Massachusetts immediately after the federal court dismissal. Third, plaintiffs allege Great American owed Kennedy a duty to defend against a Civil Investigative Demand issued by the Attorney General for the Commonwealth of Massachusetts (the "CID").

4.      All three actions involve the same core allegations: that Kennedy, who has a history of engaging in fraudulent loan transactions, and MacKenzie, a convicted felon and admitted former enforcer for Whitey Bulger, a Boston mobster, improperly gained control over the Church and used its assets for their own personal gain.

5.      The Chapin Federal Lawsuit and Chapin State Lawsuit were brought in an attempt to protect the Church's assets from Kennedy and MacKenzie. In both lawsuits, Chapin expressly and repeatedly stated that he was suing on behalf of "himself, the Church and Bostonview," and was "enforcing the rights of the corporations at issue." The General Convention sought to hold

14

certain Church assets in escrow until a successor Church affiliated with the General Convention could be formed.

6.    Even before the Underlying Plaintiffs commenced those lawsuits, the Massachusetts Attorney General issued the CID demanding that Kennedy produce for examination six categories of documents related to the Church's Board minutes, voting records, financial records, and expenditures.

7.    Plaintiffs requested Great American to provide them a defense in all three proceedings.  Great American declined to provide a defense in the Chapin Federal Lawsuit because, based on exclusions in the Policy, Great American had no coverage obligations with respect to that matter.  Great American offered, in the context of efforts to compromise the parties' disputes over coverage, to provide Plaintiffs a defense in the Chapin State Lawsuit pursuant to a reservation of rights that preserved its right to later recover any Costs of Defenses paid by Great American in the event of a determination that coverage was not available under the Policy.  Great American declined to provide Kennedy a defense of the CID because it did not constitute a Claim under the Policy, although Great American agreed to provide the Church with a defense to a later complaint filed against it by the Attorney General.

8.    Despite its lack of coverage obligations under the terms and conditions of the Policy, Great American attempted in good faith to reach a compromise of this coverage dispute. Plaintiffs, however, filed this action against Great American.

## THE PARTIES

9.    Great American is an insurance company organized under the laws of Ohio with its principal place of business in Ohio.  Great American is, and during the relevant period was, authorized to do business in the Commonwealth of Massachusetts.

10.    The Church is located at 140 Bowdoin Street, Boston, Massachusetts and was organized by an act of the Massachusetts Legislature in 1823.

11.    Bostonview is a nonprofit corporation organized under the laws of Delaware with its principal place of business at 140 Bowdoin Street, Boston, Massachusetts.

12.    MacKenzie and Kennedy are individual citizens residing in the Commonwealth of Massachusetts.

## JURISDICTION AND VENUE

13.    This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a).  Plaintiffs and defendant are of diverse citizenship, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

14.    Venue in this federal judicial district is proper under 28 U.S.C. § 1391(a) because all Plaintiffs reside in this district.

## FACTUAL BACKGROUND

15.    Prior to May 2002, Kennedy joined the Church.  Kennedy allegedly observed the mental instability of the Church's pastor, Reverend Ellis, and befriended him intending to exploit him for personal gain.  Soon, Kennedy was elected President of a non-profit corporation that holds the properties and funds of an association of Swedenborgian churches and allegedly began using his authority for personal gain.

16.    In November 2002, MacKenzie joined the Church after Kennedy introduced him to Ellis.  MacKenzie had previously helped Kennedy attempt to use his authority as President for personal gain.  Kennedy resigned in December 2002, just before a January 2003 election intended to remove him as President.

16

17.     Subsequently, Kennedy and MacKenzie arranged for friends and relatives to become Church members, even though the new members had never before attended the Church or Church activities. These new members allegedly joined the Church solely to vote as Kennedy and MacKenzie directed.

18.     As a result of these new members' votes, Kennedy and MacKenzie were elected as Officers and Trustees of the Church and directors of Bostonview. Kennedy and MacKenzie allegedly used these positions for their own personal gain. These new members also voted to expel from the Church several longstanding members who might have opposed Kennedy's and MacKenzie's actions.

19.     The General Convention became aware of the actions of Kennedy and MacKenzie by Chapin and others and, after investigating, attempted to impose corrective action. Kennedy and MacKenzie did not accept any corrective action, and instead arranged for the Church to disaffiliate from the General Convention.

20.     On November 13, 2003, unbeknownst to Great American, the Massachusetts Attorney General issued Kennedy the CID, which required him to produce six types of documents regarding the Church's Board minutes, voting records, financial records, and expenditures.

21.     On February 27, 2004, Chapin and the other Underlying Plaintiffs filed the Chapin Federal Lawsuit. The Underlying Plaintiffs asserted nine counts against Plaintiffs, including three counts alleging RICO violations by Kennedy and MacKenzie, two counts seeking declaratory relief to place the Church's assets in escrow pending creation of a new church and to undo the Church's membership changes, and four counts asserting derivative claims on behalf of the Church against Kennedy and MacKenzie.

22.    On March 1, 2004, Plaintiffs provided notice of the Chapin Federal Lawsuit to their insurance agent, who in turn tendered that Claim to Great American. Plaintiffs did not, at that time, mention the CID.

23.    By letter dated March 25, 2004 (Exhibit D to Plaintiffs' complaint), Great American informed Plaintiffs that there was no coverage for the Chapin Federal Lawsuit under the Policy. Great American explained that the Policy's "Insured v. Insured Exclusion" precluded coverage for Claims, such as the Chapin Federal Lawsuit, brought "by, or for the benefit of, or at the behest of the Organization . . . or any person or entity which succeeds to the interest of the Organization." Because Chapin brought each count of the complaint "on behalf of himself, the Church [Great American's insured], Bostonview [also an Insured], and all others similarly situated, as members of the Church and beneficial stockholders of Bostonview," the Insured v. Insured Exclusion precluded coverage.

24.    On June 14, 2004, unbeknownst to Great American, the Massachusetts Attorney General filed a complaint against the Church, alleging that in 2003 and 2004 certain Church and Bostonview officers, directors, and relatives received "excessive compensation payments and/or other benefits from the Church" and that Church officers and trustees "approved distributions of the charity's assets for the benefit of certain private individuals." The Attorney General requested the court to enter a Consent Judgment agreed to by the parties.

25.    On June 16, 2004, unbeknownst to Great American, the court entered the Consent Judgment, which imposed reporting requirements on the Church before it could undertake certain financial transactions. The Consent Judgment also required the appointment of an Interim Chief Financial Officer to monitor and control all Church and Bostonview financial and accounting transactions.

26.    On July 20, 2004, the federal court dismissed the Chapin Federal Lawsuit. The federal court found that the Underlying Plaintiffs had alleged an insufficient period of criminal activity to support their RICO claim, particularly since the Massachusetts Attorney General had entered into the consent agreement with the Church. The federal court declined to exercise jurisdiction over the remaining state claims.

27.    On August 2, 2004, the Underlying Plaintiffs filed the Chapin State Lawsuit, which was substantially similar to the Chapin Federal Lawsuit. The Chapin State lawsuit contained eleven counts, including three RICO counts against MacKenzie and Kennedy; four counts asserting derivative claims against MacKenzie and Kennedy on behalf of the Church and Bostonview; two counts seeking declaratory relief to place the Church's assets in escrow and to undo the Church's membership changes; a conversion count against MacKenzie and Kennedy; and an unjust enrichment/restitution count against MacKenzie and Kennedy.

28.    On September 10, 2004, counsel for Kennedy and MacKenzie requested coverage from Great American for the Chapin State Lawsuit. Counsel for Kennedy and MacKenzie did not inform Great American about the CID or the Attorney General action resolved by the consent judgment entered three months earlier.

29.    On December 7, 2004, the state court dismissed the Chapin State Lawsuit.

30.    On December 9, 2004, the Church's counsel requested coverage from Great American for "two separate proceedings" initiated by the Attorney General. Counsel's December 9, 2004 letter constituted the first notice to Great American of the CID and of the resultant Attorney General's action, resolved by consent judgment in June 2004.

31.    On December 15, 2004, counsel for Great American, unaware of the dismissal a week earlier, notified the Church's counsel that Great American would provide the Church a

19

defense to the Chapin State Lawsuit subject to agreement on a reservation of rights, but not to the Chapin Federal Lawsuit, for which coverage was precluded by the Insured v. Insured Exclusion. Counsel's December 15, 2004 letter did not refer to the CID or the Attorney General's lawsuit because he had not yet seen the December 9, 2004 letter from counsel for the Church.

32.    On January 20, 2005, Great American's counsel notified the Church's counsel that it could not confirm coverage for the CID, which might not constitute a "Claim," as the Policy defines that term. Great American's counsel also stated that while Great American would provide a defense to the Chapin State Lawsuit subject to agreement on a reservation of rights, some of the bills submitted by the Church's defense counsel reflected possible irregularities and they required further documentation before payment could be approved.

33.    On January 28, 2005, Great American's counsel reiterated that the Insured v. Insured Exclusion barred coverage for the Chapin Federal Lawsuit. Great American's counsel also stated that the CID was not a "Claim" under the Policy, but that the subsequent complaint filed by the Attorney General was. Accordingly, Great American stated that it would reimburse Costs of Defense incurred in defense of the Attorney General's lawsuit, but not in defense of the CID.

34.    On February 11, 2005, Plaintiffs filed this action.

## THE POLICY

35.    Great American issued Non-Profit Organization Executive Protection and Employment Practices Liability Insurance Policy No. EPP5796942 to Boston Society of New Jerusalem, Inc./Bostonview Corporation for the Policy Period November 4, 2003, to November 4, 2004. The Policy has a $1,000,000 Aggregate Limit of Liability for Each Policy Year, with a $5,000 Retention for Each Claim.

36.    The Insuring Agreement to the Policy states:

> If during the **Policy Period** or the **Discovery Period** any **Claim** is first made against an **Insured** for a **Wrongful Act** . . . the **Insurer** shall pay on their behalf **Loss** resulting from such **Claim**. The **Insurer** has the right and duty to defend any **Claim** to which this Insurance applies, even if the allegations of the **Claim** are groundless, false or fraudulent.

37.    The Policy defines **Loss** to include among other things "**Costs of Defense** incurred by the **Insured**."

38.    The Policy defines **Cost of Defense** to include "any reasonable and necessary legal fees and expenses incurred in defense of any **Claim** and appeals therefrom."

39.    The Policy defines **Claim** to mean:

> (1) any proceeding initiated against an **Insured**, including any appeals therefrom, before (a) any governmental body which is legally authorized to render an enforceable judgment or order for money damages or other relief against such **Insured**, or (b) the Equal Employment Opportunity Commission, or any similar governmental body whose purpose is to address employment practices; or (2) any written demand seeking money for damages for a **Wrongful Act**.

40.    The Policy defines **Insured** to mean "the **Organization** and any **Subsidiary** and all **Insured Persons**."

41.    The Policy defines the **Organization** to mean "the entity stated in Item 1 of the Declarations," which is "BOSTON SOCIETY OF NEW JERUSALEM, INC./BOSTONVIEW CORPORATION."

42.    The Policy defines **Insured Persons** as "all persons who were, now are, or shall be directors, trustees, officers, employees, volunteers or staff members of the **Organization** or its **Subsidiaries**, including any executive board members and committee members whether salaried or not."

43.    The Policy contains an Insured v. Insured Exclusion, stating:

21

This Policy does not apply to any **Claim** made against any **Insured**:

> by, or for the benefit of, or at the behest of the **Organization** or a **Subsidiary** or any entity which controls, is controlled by, or is under common control with the **Organization** or a **Subsidiary**, or any person or entity which succeeds to the interest of the **Organization** or a **Subsidiary.**

44.  The Policy contains an "Illegal Profit/Fraudulent Acts Exclusion," stating:

This Policy does not apply to any **Claim** made against any **Insured**:

> brought about or contributed to in fact by: (1) any **Insured** gaining any profit, advantage or remuneration to which the **Insured** was not legally entitled; or (2) the fraudulent, dishonest or criminal acts of any **Insured**; however, the **Wrongful Act** of an **Insured Person** shall not be imputed to any other **Insured Person** for the purpose of determining the applicability of this exclusion.

45.  The Policy contains a notice of claim requirement, under which the Insureds must, "as a condition precedent of their rights under this Policy, give the Insurer notice in writing of any Claim made, as soon as practicable."

46.  The Policy provides that no Insured shall "incur **Costs of Defense** in connection with any **Claim** without the **Insurer's** prior written consent."

### COUNT I
(Declaratory Judgment as to lack of coverage for the Chapin Federal Lawsuit)

47.  Great American repeats and incorporates the allegations in paragraphs 1-46 as if fully incorporated herein.

48.  Under the terms and conditions of the Policy, the Insured v. Insured Exclusion precludes coverage where an Insured is sued "by, or for the benefit of, or at the behest of the Organization . . . or any person or entity which succeeds to the interest of the Organization."

22

49.    Because the Chapin Federal Lawsuit, and all of its constituent counts, were brought for the Church's benefit or for the benefit of an entity that would succeed to the Church's interest, the Insured v. Insured Exclusion bars coverage.

50.    Under the terms and conditions of the Policy, Great American does not have any obligation to provide a defense where an Insured has gained a profit, advantage or remuneration to which he was not entitled, or has committed a fraudulent, dishonest or criminal act.

51.    The Underlying Plaintiffs brought the Chapin Federal Lawsuit, and all of its constituent counts, as a result of Kennedy's and MacKenzie's gaining of profit, advantage and remuneration to which they were not legally entitled, and therefore the Illegal Profit Exclusion bars coverage.

52.    The Underlying Plaintiffs brought the Chapin Federal Lawsuit, and all of its constituent counts, as a result of the fraudulent, dishonest or criminal acts of Kennedy and MacKenzie, and therefore the Fraudulent Acts Exclusion bars coverage.

WHEREFORE, Great American respectfully requests this Honorable Court:

A.    Declare that Great American had no duty to defend Plaintiffs against the Chapin Federal Lawsuit;

B.    Declare that because Great American had no duty to defend Plaintiffs against the Chapin Federal Lawsuit, Great American's declination of coverage and refusal to defend the Chapin Federal Lawsuit cannot, as a matter of law, constitute bad faith or a violation of Mass. G.L. c. 176D, section 3(9) and Mass. G.L. c.93A, sections 2 and 9; and

C.    Award such other and further relief to Great American as this Honorable Court deems just and equitable.

## COUNT II
(Declaratory Judgment as to lack of coverage for Chapin State Lawsuit)

53.    Great American repeats and incorporates the allegations in paragraphs 1-52 as if fully incorporated herein.

23

54.    Under the terms and conditions of the Policy, the Insured v. Insured Exclusion precludes coverage where an Insured is sued "by, or for the benefit of, or at the behest of the Organization . . . or any person or entity which succeeds to the interest of the Organization."

55.    Because the Chapin State Lawsuit, and all of its constituent counts, were brought for the Church's benefit or for the benefit of an entity that would succeed to the Church's interest, the Insured v. Insured Exclusion bars coverage.

56.    Under the terms and conditions of the Policy, Great American does not have any obligation to provide a defense where an Insured has gained a profit, advantage or remuneration to which he was not entitled, or has committed a fraudulent, dishonest or criminal act.

57.    The Chapin State Lawsuit, and all of its constituent counts, were brought as a result of Kennedy's and MacKenzie's gaining of profit, advantage and remuneration to which they were not legally entitled, and therefore he Illegal Profit Exclusion bars coverage.

58.    The Chapin State Lawsuit, and all of its constituent counts, were brought as a result of the fraudulent, dishonest or criminal acts of Kennedy and MacKenzie, and therefore the Fraudulent Acts Exclusion bars coverage.

59.    In December 2003 and January 2004, Great American, hoping to compromise the parties' disputes over coverage, notified Plaintiffs that it would provide them with a defense in the Chapin State Lawsuit subject to a reservation of rights, including the right to later deny coverage. Plaintiffs, however, refused to agree to accept a defense on those terms.

WHEREFORE, Great American respectfully requests this Honorable Court:

A.    Declare that Great American had no duty to defend Plaintiffs against the Chapin State Lawsuit;

B.    Declare that because Great American had no duty to defend Plaintiffs against the Chapin State Lawsuit, Great American's decision to not provide a defense to the

24

Chapin State lawsuit cannot, as a matter of law, constitute bad faith or a violation of Mass. G.L. c. 176D, section 3(9) and Mass. G.L. c.93A, sections 2 and 9;

C.     Declare that because Great American notified Plaintiffs that it was providing them with a defense against the Chapin State Lawsuit, subject to a reservation of rights, that, Great American cannot, as a matter of law, constitute bad faith or a violation of Mass. G.L. c. 176D, section 3(9) and Mass. G.L. c.93A, sections 2 and 9;

D.     Award such other and further relief to Great American as this Honorable Court deems just and equitable.

## COUNT III
(Declaratory Judgment as to lack of coverage for Civil Investigative Demand)

60.     Great American repeats and incorporates the allegations in paragraphs 1-59 as if fully incorporated herein.

61.     Under the terms and conditions of the Policy, any duty to defend owed by Great American is dependant upon the assertion of an actual Claim against an Insured.

62.     The CID did not constitute a Claim as defined by the Policy and, thus, Great American had no duty to defend Kennedy (or any Plaintiffs) against the CID.

63.     Furthermore, although the Attorney General issued the CID on November 13, 2003, and the court entered the Consent Judgment resolving the Attorney General's lawsuit on June 16, 2004, the Church did not provide Great American notice of the CID or the resultant lawsuit until December 9, 2004. By delaying its notice for so long and by not seeking Great American's consent to the Costs of Defense or other Loss incurred in those matters, the Insureds are not entitled to any coverage in connection with those matters.

WHEREFORE, Great American respectfully requests this Honorable Court:

A.     Declare that Great American had no duty to defend Kennedy or any Plaintiffs against the CID;

B.     Declare that because Great American had no duty to defend Kennedy or any Plaintiffs against the CID, Great American's refusal to defend the CID cannot, as

a matter of law, constitute a violation of Mass. G.L. c. 176D, section 3(9) and Mass. G.L. c.93A, sections 2 and 9; and

C.  Award such other and further relief to Great American as this Honorable Court deems just and equitable.

Dated:  April 21, 2005

Respectfully submitted,

GREAT AMERICAN INSURANCE COMPANY

Barbara A. O'Donnell BBO# 544458
Stephen J. Abarbanel BBO# 010110
ROBINSON & COLE LLP
One Boston Place
Boston, MA  02108-4404
(617) 557-5900

**Of Counsel:**

Peter F. Lovato III
Ellen D. Jenkins
BOUNDAS SKARZYNSKI WALSH & BLACK, LLC
200 East Randolph Drive, Suite 7200
Chicago IL 60601
(312) 946-4200
(312) 946-4272 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of April, 2005, I have served the foregoing document upon all parties to this action by sending a copy by first class mail, postage prepaid, to plaintiffs' counsel of record in his action:

Nicholas B. Carter, Esq.
Todd & Weld LLP
28 State Street
Boston, MA  02109

Barbara O'Donnell

26