UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

BOSTON SOCIETY OF THE NEW )
JERUSALEM, INCORPORATED, )
BOSTONVIEW CORPORATION, )
EDWARD MACKENZIE, and )
THOMAS KENNEDY, )
)
   Plaintiffs/Counterclaim Defendants, )   C.A. NO. 05-CV-10494-WGY
v. )
)
GREAT AMERICAN INSURANCE )
COMPANY, )
)
   Defendant/Counterclaim Plaintiff. )

### PLAINTIFFS' LOCAL RULE 56.1 STATEMENT IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Pursuant to Local Rule 56.1, Plaintiffs Boston Society of the New Jerusalem, Inc. ("Church"), Bostonview Corp. ("Bostonview"), Edward MacKenzie ("MacKenzie"), and Thomas Kennedy ("Kennedy") (together, "Plaintiffs" or "Insureds") submit this statement of material facts of record as to which there is no genuine issue to be tried.[1]

1.     Great American Insurance Company issued an insurance policy covering the Church, Bostonview and their trustees, directors, officers and employees for claims made during the period November 4, 2003 to November 4, 2004 (the "Policy"). Ex. 1; Affidavit of Rex Ellis ("Ellis Aff."), ¶ 4.

2.     The Policy provides as follows:

> If during the Policy Period . . . any Claim is made against an Insured for a Wrongful Act, the Insurer shall pay on their behalf Loss resulting from such Claim. The Insurer has the right and duty to defend any Claim to which this

---

[1] The attached exhibits are authenticated by the Affidavit of Philip H. Graeter, which is filed herewith.

>     insurance applies, even if the allegations of the Claim are
>     groundless, false or fraudulent.

Ex. 1, § I.

3. Pursuant to the Policy, a Claim is "any proceeding initiated against an Insured, including any appeals therefrom, before … any governmental body which is legally authorized to render an enforceable judgment … or other relief against such Insured." Ex. 1, § III.K.

4. A Wrongful Act includes "any actual or alleged error, misstatement, misleading statement, act or omission, neglect or breach of duty … by the Organization, and/or Subsidiary, and/or any Insured Persons acting in their capacity with the Organization or a Subsidiary." Ex. 1, § III.E.

5. The Church and Bostonview are both named as the insured "Organization" in the Policy.

6. Ex. 1, § III.A. MacKenzie and Kennedy are "Insured Persons." Ex. 1, § III.C.

7. The Church is a non-profit charitable corporation organized under the laws of Massachusetts more than a century ago to follow the teachings of Emanuel Swedenborg. Ellis Aff., ¶ 2.

8. During the Policy period, the Church owned all of the stock of Bostonview, a subsidiary corporation that holds title to the Church's real estate. Id., ¶ 3.

9. During the same period, MacKenzie was an officer of the Church and a director of Bostonview, and Kennedy was a trustee of the Church and a director of Bostonview. Id., ¶¶ 5, 6.

10. During the spring and early fall of 2003, after an overwhelming majority of Church members elected new leaders as the Church's and Bostonview's officers, trustees and directors, a handful of older parishioners, who either were voted out of office or who supported

2

the former officeholders, became severely dissatisfied because they had lost control of the Church to a new generation of parishioners. Id., ¶ 7.

11.     Some of these disgruntled members, including George Chapin ("Chapin"), contacted the leaders of the General Convention and the Massachusetts Association and falsely reported that Rev. G. Steven Ellis, who had been the Church's minister since 1984, was mentally unstable and that MacKenzie and Kennedy were purportedly exercising control over him for wrongful purposes. Id., ¶¶ 7, 8; see Ex. 2, ¶¶ 28, 29.

12.     The General Convention launched an "investigation" of Rev. Ellis and gave him an ultimatum that required him to resign or to exercise his ministerial duties under the authority and daily supervision of the General Convention. Ellis Aff., ¶ 9; see Ex. 2, ¶ 91, 94.

13.     Rev. Ellis, with nearly unanimous support from the members of the Church, spearheaded an effort to disaffiliate from the General Convention. Ellis Aff., ¶ 10.

14.     In November 2003, a motion to disaffiliate from the General Convention was overwhelmingly approved by the members, who voted 54 to 7 in favor of disaffiliation. Id., ¶ 11.

15.     Unlike the structure in hierarchical religious denominations, neither the General Convention nor the Association has any legal, ecclesiastical or financial control over the Church. The Massachusetts Association of the New Jerusalem ("Swedenborgian") is a voluntary association of Swedenborgian churches in Massachusetts. As a result, the disaffiliation had no effect on the Church's governance, finances, or religious mission. Id., ¶¶ 12, 13.

16.     On March 2, 2004, the General Convention, the Association, and Chapin (together, the "underlying plaintiffs") filed the Federal Lawsuit in this Court against the Insureds, Civil Action No. 04-10419 WGY. Ex. 2.

17. The Federal Lawsuit was a vehicle for the General Convention to attempt to acquire control of all of the Church's assets, including its religious sanctuary, administrative offices and the apartment building which has an estimated value of approximately $30 million.[2] Ex. 2 (Count IV); Ellis Aff., ¶ 3.

18. The General Convention brought this claim based on a misconstruction of one (former) Church by-law. Ex. 2, (Count IV); Ex. 11, p. 2 (by-law text); Ellis Aff., ¶¶ 14-15 (members voted to remove by-law).

19. The General Convention also asserted a claim (Count V) challenging the propriety of the Church's election of newly admitted Church members - - a claim with insurmountable First Amendment and standing problems, as the Superior Court found. Ex. 2 (Count V); Ex. 11.

20. Chapin brought virtually all the remaining claims against MacKenzie and Kennedy for alleged fraud and misappropriation of Church assets. Ex. 2 (Counts I - III, VI - IX).

21. All of Chapin's claims were brought purportedly "on behalf of himself, the Church, Bostonview, and all other persons similarly situated, as members of the Church and beneficial holders of stock in Bostonview." Id.

22. Chapin was not a party, either individually or "derivatively," to the General Convention's property claim Id. (Count IV).

23. The Church gave notice of the Federal Lawsuit to its insurance agent in a letter dated March 1, 2004. Ex. 3.

24. Great American responded in a letter dated March 25, 2004, stating that it was denying coverage or a defense. Ex. 4.

---

[2] In the underlying plaintiffs' appeal of the State Lawsuit's dismissal, they admit that "the gravamen" of their suit is this property claim by the General Convention. Ex. 26, p. 43.

4

25.     The Insureds responded and argued for coverage of the Federal Lawsuit in a letter dated June 9, 2004, noting in part that Chapin clearly did not join the General Convention's property claim.  Ex. 6.

26.     Great American persisted in denying the coverage to which the Insureds were entitled.  Ex. 5.

27.     The Insureds were forced to retain counsel to defend themselves in the Federal Lawsuit.  The Church and Bostonview retained Edwards & Angell LLP, and MacKenzie and Kennedy retained Todd & Weld, LLP.  Ellis Aff., ¶ 17.

28.     This Court placed the case on an expedited discovery schedule, and then ultimately dismissed the RICO claims finding that the Complaint, as a matter of law, failed to allege an actionable pattern of racketeering activity.  Ex. 7.  This Court found there was no past pattern of racketeering activity and, given the entry of the Consent Judgment and the Attorney General's active oversight of the Church, there could be no basis for a claim of future racketeering activity.  Id.  Accordingly, this Court remanded the remaining state law claims to the Massachusetts Superior Court in an Order dated July 20, 2004.  Id.

29.     The underlying plaintiffs then commenced the State Lawsuit on or about August 2, 2004 and shortly thereafter filed an Amended Complaint.  Ex. 8.

30.     Other than the re-ordering of some claims, the Amended Complaint was virtually identical to the Complaint in the Federal Lawsuit.  Compare Ex. 2, ¶¶ 111-186 with Ex.8, ¶¶ 111-202.

31.     In particular, the General Convention's declaratory judgment claim to gain control of the Church's property remained identical in Count I of the State Lawsuit.  Id. (Count I).

32. The only substantive difference is that the General Convention added claims for conversion and unjust enrichment against MacKenzie and Kennedy to the State Lawsuit (Counts II and III), and purported to join Chapin's claims for breach of fiduciary duty, fraud, and Chapter 93A (Counts V-VIII). Ex. 8.

33. The Church retained new counsel (Joseph R. Nolan, Esq.) during the pendency of the State Lawsuit. MacKenzie and Kennedy continued to be represented by Todd & Weld LLP. Ellis Aff., ¶ 18.

34. In a letter dated September 10, 2004, the Insureds renewed their request for Great American to provide coverage and specifically requested a defense in the State Lawsuit. Ex. 11. The Insureds also sent Great American voluminous material related to the Federal and State Lawsuits. See, e.g., Ex. 10.

35. Three months later, in a letter dated December 15, 2004, Great American agreed to defend the Insureds against the State Lawsuit under a reservation of rights, noting that "it appears that some of the counts set forth in the amended state court complaint appear to now have been brought exclusively by the [General Convention and Massachusetts Association]." Ex. 13, p. 4. Great American did not revisit its earlier decision to deny coverage of the Federal Lawsuit, even though the General Convention brought the same property claim on behalf of itself in that lawsuit. Ex. 13.

36. Great American's decision to provide a defense to the State Lawsuit followed by one week the Superior Court's (Brady, J.) dismissal of the State Lawsuit in an Order dated December 7, 2004. Ex. 11. Thus, Great American's financial exposure arising from the State Lawsuit was likely to be very limited.

37. While the General Convention and the other underlying plaintiffs pursued their

6

civil claims against the Church and the other Insureds, the Attorney General pursued its own legal action against the Church. Prior to the underlying plaintiffs filing the Federal Lawsuit, the same few Church members, including Chapin, brought their complaints to the Attorney General. Ellis Aff., ¶ 16.

38.     As a result of their reckless and unfounded allegations, the Public Charities Division of the Attorney General's Office ("Attorney General") initiated an action pursuant to its authority under Mass. Gen. Laws, ch. 12, § 8H, to investigate the financial operations of the Church. Ex. 19; Ellis Aff.¶ 16.

39.     On November 13, 2003, the Attorney General obtained court approval to serve a CID on the Church. Ex. 19.

40.     The Church thereafter produced all of its responsive records to the Attorney General and responded to numerous follow-up inquiries. Ellis Aff., ¶ 16.

41.     After approximately eight months of discovery and negotiations between the Church and the Attorney General, the parties reached an agreement on the terms of the Consent Judgment. Id.; Ex. 21.

42.     As a result, on or about June 14, 2004, the Attorney General filed a Complaint and the Consent Judgment, which the Church's Trustees endorsed. Ex. 20, 21.

43.     Two days later on June 16, 2004, the Massachusetts Superior Court endorsed the Consent Judgment. Ex. 21.

44.     The Consent Judgment states that the Attorney General's Action came before the Superior Court "first through Civil Investigative Demand issued by the Department of the Attorney General pursuant to Mass. Gen. Laws, ch. 12, § 8H and served upon the defendants and others in Suffolk Civil Action 03-5408A." Id. (emphasis supplied).

45. On December 9, 2004, the Church gave notice of the Attorney General's Action to Great American and requested a defense. Ex. 22.

46. In a letter dated January 20, 2005, Great American acknowledged receipt of the notice, Ex. 17, and in a letter dated January 28, 2005, disclaimed coverage for nearly all parts of the Attorney General's Action. Ex. 18.

47. Great American agreed to cover only the negligible defense costs incurred during the two-day period between the filing of the Complaint and entry of the Consent Judgment. Id., p. 4.

48. Despite numerous entreaties from Insured's counsel, Great American has refused to reconsider its position on defense of the Attorney General's Action or the Federal Lawsuit. Ex. 10, 12, 14, 16.

49. The Insureds have tendered to Great American their invoices reflecting attorneys' fees and costs to defend the Federal and State Lawsuits and the Attorney General's Action in letters dated May 13 and December 16, 2004, and January 12, 2005. Ex. 5, 14, 16.

50. The defense of the Federal Lawsuit totaled $536,747.54; the defense of the State Lawsuit totals $192,679.19 to date; and the defense of the Attorney General's Action totaled $272,697.78 through the entry of the Consent Judgment. Ex. 24, 25, 26; Ellis Aff., ¶ 19.

51. Despite Great American's agreement to reimburse defense costs in the State Lawsuit, it has failed and refused to pay any of the Insured's legal expenses. Ex. 15, 17, 18; Ellis Aff., ¶ 20.

52. Great American has also failed and refused to change its position regarding defense of the Federal Lawsuit, which contained precisely the same claim that even Great American acknowledged is a trigger for its duty to defend in the State Lawsuit. Ellis Aff., ¶ ; Ex.

15, 18.

53. On December 9, 2004, the Insureds sent a demand letter to Great American pursuant to Mass. Gen. Laws ch. 93A, § 2 and 9, and ch. 176D. Ex. 12.

        Respectfully submitted,

        BOSTON SOCIETY OF THE NEW
        JERUSALEM, INCORPORATED,
        BOSTONVIEW CORPORATION,
        EDWARD MACKENZIE, and
        THOMAS KENNEDY,

        By their attorneys,

        /s/ Nicholas C.
        Howard M. Cooper (BBO #543842)
        Nicholas B. Carter (BBO #561147)
        Philip H. Graeter (BBO #645316)
        TODD & WELD LLP
        28 State Street, 31st Floor
        Boston, MA 02109
        (617) 720-2626

Dated: July 1, 2005

## CERTIFICATE OF SERVICE

I, Nicholas B. Carter, hereby certify that on July 1, 2005, I caused a copy of the foregoing Local Rule 56.1 Statement to be served by hand upon counsel for Defendant/Counterclaim Plaintiff Barbara A. O'Donnell, Esq., Robinson & Cole LLP, One Boston Place, Boston, MA 02108-4404.

        /s/ Nicholas C.
        Nicholas B. Carter