Exhibit 1

THIS IS A CLAIMS MADE POLICY, READ IT CAREFULLY.



# GREATAMERICAN.
INSURANCE COMPANIES
580 WALNUT STREET, CINCINNATI, OHIO 45202

Declarations for
Non-Profit Organization
Executive Protection and
Employment Practices Liability
Insurance Policy

Insurance is afforded by the company indicated below: (Each a capital stock corporation)

☒ Great American Insurance Company  ☐ Agricultural Insurance Company

☐ American National Fire Insurance Company  ☐ Other _____

Policy Number: EPP5796942              Policy Form Number:   D9100

Item 1. Name of Organization: BOSTON SOCIETY OF NEW JERUSALEM, INC./BOSTONVIEW CORPORATION
Mailing Address: C/O WINN RESIDENTIAL, L.P., 6 FANEUIL HALL MARKETPLACE
City, State, Zip Code: BOSTON, MA 02109
Attn: MICHELLE MORIELLO

Item 2. Policy Period: From __11/04/2003__ To __11/04/2004__
        (Month, Day, Year)         (Month, Day, Year)
(Both dates at 12:01 a.m. Standard Time at the address of the Organization as stated in Item 1)

Item 3. Limit of Liability:
    $ 1,000,000     Aggregate Limit of Liability for Each Policy Year

Item 4. Retention:
    $ 5,000         Each Claim

Item 5. Premium:
    $ 3,615

Item 6. Endorsements Attached:
    D9318     D9709 (1)     D9713     D9714     D9800-1
    D9876

Item 7. Notices: All notices required to be given to the Insurer under this Policy shall be addressed to:
    *Great American Insurance Companies*
    *Executive Liability Division*
    *P.O. Box 66943*
    *Chicago, Illinois 60666*

Item 8. Initial Coverage Date:   11/04/2003

These Declarations along with the completed and signed Proposal Form and Non-Profit Organization Executive Protection and Employment Practices Liability Insurance Policy, shall constitute the contract between the Insureds and the Insurer.

Countersignature
Not Required

_____                    _____
*(Authorized Representative)*                *(Countersignature Date)*
D 9102 (3/97)

· Hairi ·

**GREATAMERICAN**
INSURANCE COMPANIES
P.O. Box 2575, Cincinnati, OH 45201

Non-Profit Organization
Executive Protection and
Employment Practices Liability
Insurance Policy

## DISCLOSURE STATEMENT (MASSACHUSETTS)

**THIS IS A CLAIMS MADE POLICY.
READ THE ENTIRE POLICY CAREFULLY.**

This Policy covers Claims made against the Insured only during the Policy Period (the period from the inception date of the Policy to the Policy expiration date). Claims made after the Policy's expiration are not covered even though the acts giving rise to such Claim occurred during the Policy Period.

In certain instances, the Insured may be entitled to extend coverage (referred to as a Discovery Period) for as much as fifteen (15) months after the Policy expiration date or other termination date. The Insured will receive an Automatic Discovery Period of ninety (90) days at no additional cost if the Insurer cancels or non-renews. The cost of an additional twelve (12) months is forty percent (40%) of the annual premium. An Organization which cancels or non-renews may purchase a Discovery Period for twelve (12) months after the expiration or termination date for forty percent (40%) of the annual premium.

### CERTIFICATION BY INSURED

This is to certify that I have read the above disclosure statement. I understand and accept that this is a Claims Made Policy.

BostonView Corporation
Name of Organization

[signature] As Agent
Signature of Insured or Authorized Representative

Property Manager, As Agent
Title

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy other than as above stated.

Insured:

Policy Period:
                                                Policy Number:

Countersigned by: _____
                   Authorized Representative    Endorsement Effective Date:

Form D9318 (01/97)
                                                Endorsement Number:



**GREATAMERICAN.**
INSURANCE COMPANIES
P.O. Box 2575, Cincinnati, OH 45201

Non-Profit Organization
Executive Protection and
Employment Practices Liability
Insurance Policy

## ADDITION OF INSURED PERSON

It is hereby understood and agreed that the term Insured Person shall include the positions, titles or individuals listed below.

### Additional Insured Persons

```
The lawful spouses of all Insured Persons provided, however, that
the Policy shall not provide coverage for any actual or alleged
Wrongful Act(s) of the lawful spouses of the Insured Persons.
```

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy other than as above stated.

Insured: BOSTON SOCIETY OF NEW JERUSALEM, INC./BOSTONVIEW C

Policy Period: 11/04/03 to Policy expiration

Policy Number: EPP5796942

Countersigned by: _____
                   *Authorized Representative*

Endorsement Effective Date: 11/04/03

Form D 9709 (01/97)

Endorsement Number: 2



**GREATAMERICAN.**
INSURANCE COMPANIES
580 Walnut Street, Cincinnati, Ohio 45202

Non-Profit Organization
Executive Protection and
Employment Practices Liability
Insurance Policy

## AMENDMENT TO SECTION III

It is understood and agreed that Section III of the Policy is hereby amended as follows:

Section III.G. is deleted in its entirety and replaced with the following:

G. Loss shall mean settlements and judgments, including punitive or exemplary damages or the multiple portion of any multiplied damage award; and subject to the provisions of Section V and VI, Costs of Defense incurred by the Insured, provided always, however, Loss shall not include taxes, criminal or civil fines or penalties imposed by law, or any matter which may be deemed uninsurable under the law pursuant to which this Policy shall be construed. It is understood and agreed that the enforceability of the foregoing coverage shall be governed by such applicable law which most favors coverage for punitive or exemplary damages or the multiple portion of any multiplied damage award.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy other than as above stated.

Insured: BOSTON SOCIETY OF NEW JERUSALEM, INC./BOSTONVIEW C

Policy Period: 11/04/03 to Policy expiration

Policy Number: EPP5796942

Countersigned by: _____
              *Authorized Representative*

Endorsement Effective Date: 11/04/03

Form D 9713 (01/97)

Endorsement Number: 3



**GREATAMERICAN.**
INSURANCE COMPANIES
P.O. Box 2575, Cincinnati, OH 45201

Non-Profit Organization
Executive Protection and
Employment Practices Liability
Insurance Policy

## AMENDMENT TO SECTION IV

It is understood and agreed that Section IV of the Policy is hereby amended as follows:

IV. G. is hereby deleted and replaced with the following:

G. based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving actual or alleged seepage, pollution, radiation, emission, contamination or irritant of any kind, including but not limited to smoke, vapor, dust, fibers, mold, spores, fungi, germs, soot, fumes, acids, alkalis, asbestos, chemicals or waste.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy other than as above stated.

Insured: BOSTON SOCIETY OF NEW JERUSALEM, INC./BOSTONVIEW C

Policy Period: 11/04/03 to Policy expiration

Policy Number: EPP5796942

Countersigned by: _____
                    *Authorized Representative*

Endorsement Effective Date: 11/04/03

Form D 9714

Endorsement Number: 4



**GREATAMERICAN.**
INSURANCE COMPANIES
P.O. Box 2575, Cincinnati, OH 45201

Non-Profit Organization
Executive Protection and
Employment Practices Liability
Insurance Policy

## AMENDMENT TO DECLARATIONS PAGE

It is understood and agreed that the Declarations is hereby amended by the addition of the following:

Item 9. Act of Terrorism Premium:   $ 0.00

It is further understood and agreed form TA0001 Policyholder Disclosure Offer of Terrorism Coverage is attached to and is to be considered as incorporated in and constituting a part of this Policy.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy other than as above stated.

Insured: BOSTON SOCIETY OF NEW JERUSALEM, INC./BOSTONVIEW C

Policy Period: 11/04/03 to Policy expiration

Policy Number: EPP5796942

Countersigned by: _____
                   *Authorized Representative*

Endorsement Effective Date: 11/04/03

Form D 9800-1 (02/03)

Endorsement Number: 5



**GREATAMERICAN.**
INSURANCE COMPANIES
P.O. Box 2575, Cincinnati, OH 45201

Non-Profit Organization
Executive Protection and
Employment Practices Liability
Insurance Policy

## COVERAGE FOR ACTS OF TERRORISM

It is understood and agreed that Section VIII. General Conditions of the Policy is hereby amended by the addition of the following:

Section VIII. General Conditions

__K__. Act of Terrorism Coverage

Subject to all other terms and conditions of this Policy, coverage is available for Loss caused by an Act of Terrorism as defined below.

"Act of Terrorism" means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States –

  (i)  to be an act of terrorism;
  (ii) to be a violent act or an act that is dangerous to –
      (I)   human life;
      (II)  property; or
      (III) infrastructure;
  (iii) to have resulted in damage within the United States, or outside of the United States in the case of –
      (I)  an air carrier or vessel described in Section (5)(B) of the Terrorism Risk Insurance Act of 2002; or
      (II) the premises of a United States mission; and
  (iv) to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

With respect to any one or more Acts of Terrorism under the Terrorism Risk Insurance Act of 2002, we will not pay any amounts for which we are not responsible under the terms of that Act (including subsequent action of Congress pursuant to the Act) due to the application of any clause which results in a cap on our liability for payments for terrorism losses.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy other than as above stated.

Insured: BOSTON SOCIETY OF NEW JERUSALEM, INC./BOSTONVIEW C

Policy Period: 11/04/03 to Policy expiration          Policy Number: EPP5796942

Countersigned by: _____
                  *Authorized Representative*         Endorsement Effective Date: 11/04/03

Form D 9876 (12/02)                    Endorsement Number: 6



**GREATAMERICAN.**
INSURANCE COMPANIES
580 Walnut Street, Cincinnati, Ohio 45202

## POLICYHOLDER DISCLOSURE
## OFFER OF TERRORISM COVERAGE

The Terrorism Risk Insurance Act of 2002 (the Act) establishes a program within the Department of the Treasury, under which the federal government shares, with the insurance industry, the risk of loss from future terrorist attacks. The Act applies when the Secretary of the Treasury certifies that an event meets the definition of an Act of Terrorism. The Act provides that, to be certified, an Act of Terrorism must cause losses of at least five million dollars and must have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest to coerce the government or population of the United States.

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 90% of that portion of the amount of such insured losses that exceeds the applicable insurer retention.

In accordance with the Terrorism Risk Insurance Act of 2002, we are required to offer you coverage for losses resulting from an act of terrorism that is certified pursuant to the Terms of the Act as an Act of Terrorism committed by an individual(s) acting on behalf of a foreign person or foreign interest. All other provisions of this policy will still apply to such an act. That is, a loss will not be excluded or covered just because it was caused by an Act of Terrorism.

The portion of the annual premium that is attributable to coverage for Acts of Terrorism that are certified under the Terrorism Risk Insurance Act of 2002 is: $0.00.

All other terms and conditions of the policy remain unchanged.

TA0001 (01/03)

FROM :                FAX NO. :           Sep. 25 2003 01:41PM P2

**GREAT AMERICAN**
INSURANCE COMPANIES

**Proposal Form For Non-Profit Organization Executive Protection and Employment Practices Liability Insurance**

1. Name of Organization: _Boston Society of New Jerusalem, Inc._ / Bostonvia Corp.
   Mailing Address: _c/o WinnResidential LP  6 Faneuil Hall MktPlce_
   City: _Boston_    State: _MA_    Zip Code: _02109_

2. The officer designated as agent of the Organization and all of the Insureds to receive any and all notices from the Insurer or an authorized representative concerning this insurance:
   Name: _Michelle Moriello, Agent_    Title: _Property Manager_

3. Describe the Organization's purpose and the nature of operation(s):
   _Apartment Building + Rentals (Board of Directors)_

4. a. Date organized: _____
   b. Tax status: ☒ Taxable or ☐ Tax Exempt under of IRC Sec. 501(c) _____

5. a. Number of Employees: _5_
   b. Annual Salary/Wages Expense: $ _Volunteer_
   c. Total Assets: $ _____

6. Please attach the following information on all Subsidiaries. If "None", please indicate: ☒ None _None_
   (a) Name; (b) Date of acquisition/creation; (c) Percent of control; (d) Nature of operation; (e) Operated for profit or non-profit and (f) Name of parent organization. Please attach the most recent annual report or annual audit/examination or internal financial statement for each Subsidiary.
   COVERAGE IS NOT AUTOMATICALLY PROVIDED FOR ALL SUBSIDIARIES. TERMS AND CONDITIONS OF COVERAGE FOR SUBSIDIARIES ARE DETAILED IN SECTION III.D.

7. Provide the following information if a Condo/Homeowners Association: (If not, skip to question 8.)
   a. Number of Units/Lots _____ b. Average Unit/Lot Value _____ c. % of Units/Lots Sold _____
   
                                                                                                                    YES   NO
   d. Has control of the Association been transferred from the Builder/Developer?     ☐   ☐
   e. If control has been transferred, does the Builder/Developer maintain any representation on the Association's Board of Directors or other governing body? If "Yes", please attach details.     ☐   ☐

8. Have there been any changes in senior management (Executive Director, President, Executive Vice President etc.) for reasons other than death, retirement at the normal retirement age or term limitations? If "Yes", please attach details.
   _Membership voted out prior chairman (president)_     ☒   ☐

9. a. What was the approximate turnover rate for employees in the last twelve months? _Volunteers - elected basis 100% turn._
   b. Did the turnover rate of employees exceed historical levels of the past five years? If "Yes", please attach details.     ☐   ☒

10. Is the Organization or any of its Subsidiaries involved in or presently considering any merger, consolidation, acquisition divestment or sale of a portion of its business or has a similar transaction been considered or completed within the last three years? If "Yes", please attach details.     ☐   ☒

11. Does the Organization or any proposed Insured perform any of the following:
    a. Promote, sponsor or provide any form of insurance to members or non-members?     ☐   ☒
    b. Take any disciplinary action or recommend disciplinary action as a result of peer review or standard setting activities?     ☐   ☒
    c. Engage in any labor negotiations?     ☐   ☒
    d. Provide any other professional services?     ☐   ☒

D.8230 (10/97)                                                                                        Page 1 of 2

FROM :                                    FAX NO. :                                    Sep. 25 2003 01:42PM P.

e. Engage in any business transactions with businesses which are controlled by any proposed Insured Persons?    YES ☐  NO ☒

f. Engage in any form of research, development or experimentation? If "Yes", for any of the above, please attach details.    ☐  ☒

12. Does the Organization or any proposed Insured have knowledge of any Federal, State or local legal proceedings, investigations or claims against the Organization and/or any proposed Insured during the past five years? If "Yes", please attach details.    ☐  ☒

PERTAINING TO QUESTION 12, IT IS UNDERSTOOD AND AGREED THAT ANY CLAIM ARISING THEREFROM SHALL BE EXCLUDED UNDER THE PROPOSED COVERAGE.

13. Is the undersigned or any proposed Insured aware of any fact, circumstance or situation involving the Organization or its Subsidiaries or any proposed Insured which he or she has reason to believe might result in a future Claim? If "Yes", please attach details.    ☐  ☒

IT IS UNDERSTOOD AND AGREED THAT IF KNOWLEDGE OF ANY SUCH FACT, CIRCUMSTANCE OR SITUATION EXISTS, ANY CLAIM SUBSEQUENTLY ARISING THEREFROM SHALL BE EXCLUDED UNDER THE PROPOSED COVERAGE.

14. Current Executive Protection and Employment Practices Liability Insurance, Directors' & Officers' Liability Insurance or similar coverage (answer each item):

a. Carrier __Chubb__    b. Limit _____
c. Retention _____    d. Policy Expiration __9/29/03__    e. Premium __$6200__
f. Has any carrier refused, cancelled or non-renewed similar coverage? If "Yes", please attach details.    ☒  ☐
g. Have any notices been provided to any previous carriers? If "Yes", please provide details.    ☐  ☒

The undersigned President (or Executive Director) declares that to the best of his/her knowledge the statements set forth herein are true and correct and that reasonable efforts have been made to obtain sufficient information from each and every proposed Insured to facilitate the proper and accurate completion of this Proposal Form. The undersigned further agrees that if any significant adverse change in the condition of the applicant is discovered between the date of this Proposal Form and the effective date of the Policy, which would render this Proposal Form inaccurate or incomplete, notice of such change will be reported in writing to the Insurer immediately. The signing of this Proposal Form does not bind the undersigned to purchase the insurance, but it is agreed that this Proposal Form and any material submitted therewith are the representations of the proposed Insureds and are material. It is further agreed that this Proposal Form and any material submitted therewith shall be the basis of the contract should a Policy be issued, and this Proposal Form and any attachments thereto will be attached to and become a part of the Policy.

It is represented that the particulars and statements contained in this Proposal Form, including all materials submitted herewith, are true and are the basis of the Policy and are to be considered as incorporated in and constituting part of the Policy. However, the Policy shall not be voided or rescinded and coverage shall not be excluded as a result of any untrue statement in this Proposal Form, except as to the Organization, its Subsidiaries, and those Insured Persons making such statement or having knowledge of its untruth.

By _____[signature]_____    Date __9-23-03__
SIGNATURE OF PRESIDENT OR EXECUTIVE DIRECTOR

Title _____[signature]_____

"A POLICY CANNOT BE ISSUED UNLESS THE PROPOSAL FORM IS PROPERLY SIGNED AND DATED."

PLEASE NOTE: A copy of the Organization's latest annual report or annual audit/examination or internal financial statement must be provided at the time the completed Proposal Form is submitted. This Proposal Form, including any material submitted therewith, shall be treated in strictest confidence.

Please submit this Proposal Form including documentation to:  GREAT AMERICAN INSURANCE COMPANIES
                                                                EXECUTIVE LIABILITY DIVISION
                                                                P.O. BOX 66943
                                                                CHICAGO, ILLINOIS 60666

D-5210 (8/97)

Page 2 of 2

# Non-Profit Organization Executive Protection and Employment Practices Liability Insurance Policy



**GREAT AMERICAN.**

INSURANCE COMPANIES
580 Walnut Street, Cincinnati, Ohio 45202

D.9100 (12/99)

**THIS IS A CLAIM MADE POLICY. READ IT CAREFULLY.**

In consideration of the payment of the premium and in reliance upon all statements made and information furnished to the company shown in the Declarations (a stock insurance company, hereinafter called the Insurer), including the statements made in the Proposal Form and subject to the terms, conditions and limitations of this Policy, the Insured and Insurer agree:

### Section I. Insuring Agreement

If during the Policy Period or the Discovery Period any Claim is first made against an Insured for a Wrongful Act, including an Employment Practices Wrongful Act, the Insurer shall pay on their behalf Loss resulting from such Claim. The Insurer has the right and duty to defend any Claim to which this insurance applies, even if the allegations of the Claim are groundless, false or fraudulent.

### Section II. Discovery Period

A. If this Policy is not renewed or is cancelled, either by the Organization or the Insurer, for any reason other than non-payment of premium, the Organization shall be entitled to acquire an additional reporting period for Claims first made against an Insured as set forth below, but only with respect to Wrongful Acts committed prior to the end of the Policy Period. This additional reporting period shall be referred to as the Discovery Period.

B. If this Policy is not renewed or is cancelled by the Insurer for any reason other than non-payment of premium, the Discovery Period shall be the period of ninety (90) days from the end of the Policy Period, and there shall be no charge for this Automatic Discovery Period of ninety (90) days. If prior to the end of the Automatic Discovery Period the Organization pays the Insurer an additional amount equal to forty percent (40%) of the annual premium of this Policy, the term of the Discovery Period shall be extended for an additional twelve (12) months from the end of the Automatic Discovery Period. The Insured shall have no right to purchase this extension of the Discovery Period at any later date.

C. If this Policy is not renewed or cancelled by the Organization, the Organization may purchase a Discovery Period of twelve (12) months from the end of the Policy Period, provided that the Organization pays the Insurer an additional amount equal to forty percent (40%) of the annual premium of this Policy within thirty (30) days of the end of the Policy Period. The Organization shall have no right to purchase this Discovery Period at any later date.

D. A renewal quotation by the Insurer incorporating different terms, conditions, Retention, Limit of Liability or premium with respect to the coverage afforded by this Policy shall not be deemed to constitute a refusal to renew by the Insurer for the purpose of determining the right to the Discovery Period.

E. The fact that this Policy may be extended by virtue of the Discovery Period shall not in any way increase the Limit of Liability stated in Item 3 of the Declarations. For purposes of the Limit of Liability, the Discovery Period is considered to be part of and not in addition to the last Policy Year.

### Section III. Definitions

A. "Organization" shall mean the entity named in Item 1 of the Declarations.

B. "Insured" shall mean the Organization and any Subsidiary and all Insured Persons.

C. "Insured Person" shall mean all persons who were, now are, or shall be directors, trustees, officers, employees, volunteers or staff members of the Organization or its Subsidiaries, including any executive board members and committee members whether salaried or not.

D. "Subsidiary" shall mean any entity which qualifies as a not-for-profit organization under the Internal Revenue Code, other than a political committee organized pursuant to Section 432 of the Federal Election Campaign Act of 1971 (and amendments thereto), and for which the Organization has or controls the right to elect or appoint more than fifty percent (50%) of the Board of Directors or other governing body of such entity, or any other entity added as a Subsidiary by written endorsement to this Policy. Coverage shall apply to a Subsidiary only for Wrongful Acts committed during the time such entity so qualified as a Subsidiary.

E. "Wrongful Act" shall mean any actual or alleged error, misstatement, misleading statement, act or omission, neglect or breach of duty, or Employment Practices Wrongful Act by the Organization, and/or a Subsidiary, and/or any Insured Persons acting in their capacity with the Organization or a Subsidiary.

F. "Employment Practices Wrongful Act" shall mean: (1) wrongful dismissal, discharge or termination of employment, whether actual or constructive; (2) employment related misrepresentation; (3) violation of employment laws; (4) sexual or workplace harassment of any kind; (5) discrimination; (6) wrongful failure to employ or promote; (7) wrongful discipline; (8) wrongful deprivation of career opportunity including a wrongful failure to hire or promote; (9) failure to grant tenure; (10) negligent evaluation; (11) retaliation; and/or (12) failure to provide adequate workplace or employment policies or procedures.

G. "Loss" shall mean settlements and judgments, and subject to the provisions of Section V and Section VI, Costs of Defense incurred by the Insured, provided always, however, Loss shall not include taxes, criminal or civil fines or penalties imposed by law, punitive or exemplary damages, or the amount of any multiple damage award which is in excess of the damage award which was so multiplied, or any matter which may be deemed uninsurable under the law pursuant to which this Policy shall be construed.

H. "Costs of Defense" shall mean any reasonable and necessary legal fees and expenses incurred in defence of any Claim and appeals therefrom, and cost of attachment or similar bonds (but without any obligation on the part of the Insurer to apply for or furnish such bonds); provided, however, Costs of Defense shall not include: (1) salaries, wages, overhead or benefit expenses associated with any Insured; and (2) any amounts incurred in defense of any Claim which any other insurer has a duty to defend, regardless of whether or not such other insurer undertakes such duty.

I. "Policy Year" shall mean the period of one year following the effective date and hour of this Policy or the period of one year following any anniversary date thereof falling within the Policy Period; or if the time between the effective date or any anniversary date and the termination of this Policy is less than one year, such lesser period. Any Discovery Period shall be considered part of and not in addition to the last Policy Year.

J. "Policy Period" shall mean the period from the inception of this Policy to the Policy expiration date stated in Item 2 of the Declarations or its earlier termination, if any.

K. "Claim" shall mean: (1) any proceeding initiated against an Insured, including any appeals therefrom, before (a) any governmental body which is legally authorized to render an enforceable judgment or order for money damages or other relief against such Insured, or (b) the Equal Employment Opportunity Commission, or any similar governmental body whose purpose is to address employment practices; or (2) any written demand seeking money damages for a Wrongful Act.

D-9100 (12/99)

2

L. "Related Wrongful Acts" shall mean Wrongful Acts which are logically or causally connected by reason of any common fact, circumstance, situation, transaction, casualty, event or decision.

Section IV. Exclusions

This Policy does not apply to any Claim made against any Insured:

A. brought about or contributed to in fact by: (1) any Insured gaining any profit, advantage or remuneration to which the Insured was not legally entitled; or (2) the fraudulent, dishonest or criminal acts of any Insured; however, the Wrongful Act of an Insured Person shall not be imputed to any other Insured Person for the purpose of determining the applicability of this exclusion;

B. to the extent it is insured under any other valid policy or policies, whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, and regardless of whether or not any Loss in connection with such Claim is recoverable under such other policy or policies; provided, however, this exclusion shall not apply to the amount of Loss which is excess of the amount of any deductible or retention amounts and the limit of liability of such other policy or policies where such Claim is otherwise covered by the terms and conditions of this Policy;

C. based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving:

(1) any Wrongful Act or any fact, circumstance or situation which is the subject of any notice given by any Insured during the policy period or any extension thereof of any prior policy providing coverage similar to that provided herein, or which has been the subject of any Claim made prior to the effective date of this Policy; or

(2) any prior and/or pending civil, criminal, administrative or investigative proceeding initiated against any Insured as of the date stated in Item 8 of the Declarations;

D. based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or any way involving: (1) bodily injury, sickness, disease or death of any person, assault, or battery; or (2) damage to or destruction of any tangible property, including the loss of use thereof; or (3) mental anguish, emotional distress, invasion of privacy, wrongful entry, eviction, false arrest, false imprisonment, malicious prosecution, libel or slander; provided, however, that part (3) of this exclusion shall not apply to any Claim brought by or on behalf of any past, present or prospective Insured Person for an Employment Practices Wrongful Act;

E. based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving any actual or alleged violation of the Employee Retirement Income Security Act of 1974 (or any regulations promulgated thereunder) or similar provision of any statutory or common law;

F. for any wrongful act of an Insured Person in their capacity as a director, officer or employee of an entity other than the Organization or a Subsidiary, even if directed or requested to serve such other entity, except where this Policy has been specifically endorsed to provide such extension of coverage;

G. based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving actual or alleged seepage, pollution, radiation, emission or contamination of any kind;

H. by, or for the benefit of, or at the behest of the Organization or a Subsidiary or any entity which controls, is controlled by, or is under common control with the Organization or a Subsidiary, or any person or entity which succeeds to the interest of the Organization or a Subsidiary;

I. for any actual or alleged liability of any Insured under any contract or agreement, express or implied, written or oral, except for employment related obligations which would have attached absent such contract or agreement;

J. for any obligation of the Organization or a Subsidiary to modify any building or property in order to affect compliance with municipal, state or federal law.

Section V. Limit of Liability

A. The Insurer shall be liable to pay one hundred percent (100%) of Loss in excess of the Retention stated in Item 4 of the Declarations. The Insurer's maximum Limit of Liability for the aggregate amount of Loss resulting from all Claims deemed to have been made in a Policy Year shall be the amount shown in Item 3 of the Declarations.

B. More than one Claim involving the same Wrongful Act or Related Wrongful Acts of one or more Insureds shall be considered a single Claim, and only one Retention shall be applicable to such single Claim. All such Claims, constituting a single Claim shall be deemed to have been made on the earlier of the following dates: (1) the earliest date on which any such Claim was first made; or (2) the earliest date on which any such Wrongful Act or Related Wrongful Act was reported under this Policy or any other policy providing similar coverage.

C. Costs of Defense incurred by the Insurer shall be in addition to the Limit of Liability, and such Costs of Defense shall not be subject to the Retention amount. If Costs of Defense are incurred by the Insured with the Insurer's consent, such Costs of Defense shall be considered Loss and thus shall be subject to the Limit of Liability and Retention.

D. With respect to all Claims deemed to have been made in a Policy Year, should the Limit of Liability be exhausted by payment of Loss resulting from one or more of such Claims, the Insurer's duty to defend shall cease and any and all obligations of the Insurer hereunder shall be deemed to be completely fulfilled and extinguished and the Insurer shall have no further obligations hereunder of any kind or nature.

Section VI. Costs of Defense and Settlements

A. No Insured shall admit liability, offer to settle, or incur Costs of Defense in connection with any Claim without the Insurer's prior written consent. Such consent shall not be unreasonably withheld. The Insured shall provide the Insurer with full cooperation and all information which would reasonably be required in order to allow the Insurer to reach a decision as to such consent. Any Costs of Defense incurred and/or settlements agreed to prior to the Insurer's consent thereto shall not be covered hereunder.

B. The Insurer has the right to investigate and settle any Claim, as it deems expedient. In the event the Insurer recommends a settlement and the Insured refuses to consent thereto, the Insurer shall be released from any obligation to further defend such Claim. Subject to the Limit of Liability, the Insurer's liability for such Claim is limited to the amount in excess of the Retention which the Insurer would have contributed to the settlement had the Insured consented to settlement, plus Costs of Defense covered by the Policy incurred prior to the date of such refusal to settle.

Section VII. Notice of Claim

A. The Insureds shall, as a condition precedent of their rights under this Policy, give the Insurer notice in writing of any Claim made, as soon as practicable.

B. If during the Policy Period or Discovery Period the Insured first becomes aware of a specific Wrongful Act, and if the Insured gives written notice to the Insurer as soon as practicable of (1) the specific Wrongful Act; (2) the injury or damage which has or may result therefrom; and (3) the circumstances by which the Insured first became aware thereof; then any Claim arising out of such Wrongful Act which is subsequently made against the Insured and not otherwise excluded by the terms of the Policy shall be deemed to have been made at the time the Insurer received such written notice from the Insured.

D 9100 (12/99)

3

C. In addition to furnishing the notice as provided in Section VII A or B the Insured shall, as soon as practicable, furnish the Insurer with copies of reports, investigations, pleadings and other papers in connection therewith.

D. Notice to the Insurer as provided in Section VII A or B shall be given to:

GREAT AMERICAN INSURANCE COMPANIES
EXECUTIVE LIABILITY DIVISION, CLAIMS DEPARTMENT
P.O. BOX 66943
CHICAGO, IL 60666.

Section VIII. General Conditions

A. Cancellation or Non-Renewal

(1) This Policy may be cancelled by the Organization at any time by written notice to the Insurer. Upon cancellation, the Insurer shall retain the customary short rate portion of the premium.

(2) This Policy may be cancelled by or on behalf of the Insurer by delivering to the Organization at the address stated in Item 1 of the Declarations, written notice stating when, not less than ninety (90) days thereafter, the cancellation shall be effective. The delivery of such notice shall be sufficient proof of notice and this Policy shall terminate at the date and hour specified in such notice. Upon cancellation, the Insurer shall retain the pro-rata portion of the premium. Payment or tender of any unearned premium by the Insurer shall not be a condition precedent to the effectiveness of cancellation but such payment shall be made as soon as practicable.

(3) If the Insurer elects not to renew this Policy, the Insurer shall provide the Organization with not less than ninety (90) days advance notice thereof.

B. Proposal Form

It is agreed that the particulars and statements contained in Proposal Forms submitted to the Insurer (and any material submitted therewith) are the representations of the Insured, and it is understood that such representations are material and that this Policy is issued in reliance upon such representations, which are to be considered as incorporated in and constituting part of this Policy. However, this Policy shall not be voided or rescinded and coverage shall not be excluded as a result of any untrue statement in the Proposal Form, except as to the Organization, its Subsidiaries and those Insured Persons making such statement or having knowledge of its untruth.

C. Action Against the Insurer

(1) No action shall be taken against the Insurer unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this Policy, and until the Insured's obligation to pay shall have been finally determined by an adjudication against the Insured or by written agreement of the Insured, claimant and the Insurer.

(2) No person or organization shall have any right under this Policy to join the Insurer as a party to any Claim against any Insured nor shall the Insurer be impleaded by any Insured or their legal representative in any such Claim.

D. Conversion to Run-Off Coverage

If prior to the end of the Policy Period, another organization acquires substantially all of the assets of the Organization, or the Organization merges into another organization, or the Organization ceases to qualify as a not-for-profit organization under the Internal Revenue Code (such events hereinafter referred to as Transaction), then:

(1) the Organization must give written notice of such Transaction to the Insurer within thirty (30) days after the effective date of such Transaction, and provide the Insurer with such information as the Insurer may deem necessary; and

(2) this Policy, including the Discovery Period if elected, shall apply, but only with respect to any Wrongful Act committed prior to the effective date of such Transaction.

E. Subrogation

In the event of any payment under this Policy, the Insurer shall be subrogated to all of the rights to recovery of the Insured and the Insured shall execute all papers required and shall do everything that may be necessary to secure such rights, including the execution of such documents as may be necessary to enable the Insurer to effectively bring suit in the name of any Insured.

F. Assignment

Assignment of interest under this Policy shall not bind the Insurer until its consent is endorsed hereon.

G. Conformity to Law

Any terms of this Policy which are in conflict with the terms of any applicable laws are hereby amended to conform to such laws.

H. Entire Agreement

By acceptance of this Policy, the Insured and the Insurer agree that this Policy (including the Proposal Forms submitted to the Insurer and any materials submitted therewith) and any written endorsements attached hereto constitute the entire agreement between the parties.

I. Organization Represents Insured

By acceptance of this Policy, the Organization shall be designated to act on behalf of the Insureds for all purposes including, but not limited to, giving and receiving of all notices and correspondence, the cancellation or non-renewal of this Policy, the payment of premiums, and the receipt of any return premiums that may be due under this Policy.

J. Representative of the Insurer

Great American Insurance Companies, Executive Liability Division, Post Office Box 66943, Chicago, Illinois 60666 shall act on behalf of the Insurer for all purposes including, but not limited to, the giving and receiving of all notices and correspondence.

In witness whereof the Insurer has caused this Policy to be signed by its President and Secretary and countersigned, if required, on the Declarations page by a duly authorized agent of the Insurer.

GREAT AMERICAN INSURANCE COMPANIES

*[Signature]*
Secretary

*[Signature]*
Carl H. Lindner III
President

D.9100 (12/99)

4