Exhibit 15

**BSWB**

ATTORNEYS AT LAW

CHICAGO
NEW YORK
LONDON

Thomas M. Sheffield

Direct Dial: 312 946 4274
tsheffield@bswb.com

**Boundas, Skarzynski, Walsh & Black, LLC**

200 East Randolph Drive  Suite 7200  Chicago, Illinois 60601
P: 312 946 4200  F: 312 946 4272  W: www.bswb.com

January 7, 2005

**VIA FACSIMILE    (617) 227-5777**
**AND U.S. MAIL**

Nicholas Carter, Esq.
Todd & Weld, LLP
28 State Street
Boston, Massachusetts  02109

| | | |
|---|---|---|
| Re: | Non Profit Organization Executive Protection and Employment Practices Liability Insurance | |
| | Policy No.: | EPP5796942 |
| | Insured: | BOSTON SOCIETY OF NEW JERUSALEM, INC./BOSTONVIEW CORPORATION |
| | Location: | BOSTON, MASSACHUSETTS |
| | Claimants: | THE GENERAL CONVENTION OF THE NEW JERUSALEM IN THE U.S.A., ET AL. |
| | GAIC Claim No. | 965-584-213-01-1 |
| | Our File No.: | 13215 |

Dear Nick:

Thank you for your telephone call of January 5, 2005 with regard to this matter. As I understand your comments during our conversation, you are requesting that Great American immediately agree to provide for the payment of defense costs for both the federal and state court complaints involved in this matter. Additionally, it is your position that, until Great American does so, you will not agree to meet with us at your offices in Boston, as we have proposed. In your view, such a meeting would not further the dialogue concerning the coverage issues presented by the state and federal cases. If my understanding in this regard is incorrect, please let me know.

First, I am sorry to hear that this is your position. We still want to meet with you to discuss this matter fully and still request that we get together soon for that purpose. We continue to believe that some portions of this matter may be afforded coverage under the Policy, but we respectfully disagree with your position that there is no distinction between the federal and state court complaints for purposes of insurance coverage. The federal complaint, on its face, contains

**BSWB**

Nicholas Carter, Esq.
Todd & Weld, LLP
January 7, 2005
Page 2

allegations brought by all the plaintiffs, one of whom is an insured under the Policy issued by Great American. Because of this fact, Great American noted that the insured versus insured exclusion applied to the federal court complaint.

Nevertheless, we have already stated our belief that, based on what we know about this matter, coverage—subject to the terms and conditions of the Policy—appears to be available for the defense of the state court matter. As I indicated to you, we seek to learn more about this matter and to discuss the possibilities for resolution of the issues involved. With that in mind, we hope you will remove your condition that Great American immediately confirm coverage for this matter in its entirety before you agree to meet with us.

It is our hope that we can meet to discuss the coverage issues in this matter. However, we must also respond to your letter of December 16, 2004, where you indicated that "[i]f a commitment [by Great American to cover all the federal and state court defense costs] is not promptly made in writing, then [the insureds] will have no recourse but to bring claims against Great American for breach of contract and unfair and deceptive insurance practices in violation of Mass. Gel. L. chapter 176D and 93A." We acknowledge your position but disagree with your conclusions and your position that the insureds have no recourse but to commence coverage litigation.

You state in your letter, referring to the federal complaint, that "[i]t is clear from the face of the complaint that this claim [Count V] was not brought by George Chapin as he does not even attempt to meet the derivative claim requirements of Massachusetts Rule of Civil Procedure 23.1, whereas he at least attempts to meet those requirements in connection with other claims in the complaint."

It is true that Counts IV and V do not contain allegations by George Chapin that he possesses the statutory requirements for bringing a derivative claim on behalf of the local congregation. However, while your letter suggests that this is because George Chapin does not bring this claim *at all*, it is apparent that George Chapin does not plead derivatively because he *need not* plead derivatively for purposes of Counts IV and V. The plaintiffs, which by definition includes George Chapin, brought Counts IV and V in order to obtain a declaratory judgment on behalf of themselves, and not on behalf of the local congregation. No derivative standing is required for those Counts and George Chapin was not excluded from Counts IV and V simply because those Counts did not contain the statutorily prescribed language for derivative claims.

Moreover, you suggest that George Chapin never had any basis to assert standing, and the state court reached the same conclusion. First, the federal court determined that no standing existed because the apartment property had not been sold and thus, no injury had yet occurred. The state court, conversely, determined that standing did not exist because no private right of

**BSWB**

Nicholas Carter, Esq.
Todd & Weld, LLP
January 7, 2005
Page 3

action existed for the alleged wrongful acts. Only an action by the state attorney general would be appropriate, according to the Massachusetts state court decision. However, the issue of standing is not determinative of the coverage afforded under the Policy. The allegations, regardless of issues of standing, were brought on behalf of the plaintiffs—including George Chapin.

As stated above, it is our hope that you will remove your condition that Great American confirm coverage for this matter in its entirety before a meeting will be possible. We are interested in the case and would like to explore opportunities for resolution of the coverage issues—outside the context of the adversarial coverage litigation you suggest. We are also interested in learning about the prospects for resolution of the Claim against the Insureds, including what issues may be raised in an appeal by the claimants.

With that in mind, and while fully reserving its rights, Great American proposes that the parties enter into an interim funding agreement with respect to those fees that Great American has accepted as being potentially covered under the Policy. This will facilitate payment of those fees not in dispute and will allow all the parties to discuss the issues which remain with respect to those amounts involved with the federal complaint. We attach a draft of such an agreement and look forward to speaking with you more about that document.

Great American expressly reserves all its rights, remedies, and defenses in connection with this matter. We thank you for your cooperation and assistance with this matter. Should you have any questions or need any additional information, or should you wish to discuss this matter at any time, please do not hesitate to contact me at the number listed above. We look forward to working with you and the Insureds toward the resolution of this matter.

Very truly yours,

BOUNDAS, SKARZYNSKI WALSH &
BLACK, LLC

By: _____
Thomas M. Sheffield

TMS/pmf
Enclosure
P:\GREA01\13215\Letters\Carter-Nicholas-02-tms.doc

# DRAFT

## <u>INTERIM FUNDING AND RESERVATION OF RIGHTS AGREEMENT</u>

This Agreement is made and entered into by and between Edward Mackenzie, Thomas Kennedy, the Boston Society of the New Jerusalem (Swedenborgian) and Bostonview Corporation (collectively, the "Boston Society") and Great American Insurance Company ("GAIC").

WHEREAS, GAIC issued to the Boston Society an Executive Protection and Employment Practices Liability Insurance Policy, number EPP5796942 for the Policy Period November 4, 2003 to November 4, 2004 (the "Policy").

WHEREAS, on March 2, 2004 a complaint, styled *The General Convention of the New Jerusalem in the United States of America, Inc., the Massachusetts Association of the New Jerusalem (Swedenborgian), and George Chapin v. Edward Mackenzie, Thomas Kennedy, Boston Society of the New Jerusalem, Incorporated (Swedenborgian), and Bostonview Corporation* was filed against The Boston Society in the U.S. District Court for the District of Massachusetts (Case No. 04-10419-WGY)(the "Federal Action");

WHEREAS, on July 20, 2004 the Federal Court Action was dismissed with prejudice;

WHEREAS, on or around August 2, 2004, an amended complaint, styled *The General Convention of the New Jerusalem in the United States of America, Inc., the Massachusetts Association of the New Jerusalem (Swedenborgian), and George Chapin v. Edward Mackenzie, Thomas Kennedy, Boston Society of the New Jerusalem, Incorporated (Swedenborgian), and Bostonview Corporation* was filed against The Boston Society in the Superior Court of Suffolk County, Massachusetts (Case No. 04-3432H)(the "State Action");

WHEREAS, as a result of the Federal Action, it became necessary for The Boston Society to retain Edwards & Angel and Todd & Weld as defense counsel

WHEREAS, the Boston Society has also been named in various Massachusetts state regulatory investigations (the "State Investigations");

WHEREAS, Edward Mackenzie, Thomas Kennedy and the Boston Society of New Jerusalem Inc./Bostonview Corporation are Insureds under the Policy, as the Policy defines the term "Insureds," and the Boston Society has requested that GAIC advance Costs of Defense, as the Policy defines the term "Costs of Defense," incurred in the Federal and State Actions;

WHEREAS, GAIC has denied coverage for claimed Costs of Defense and claimed Loss incurred by the Insureds with respect to the Federal Action, pursuant to the provisions of the Policy;

1

WHEREAS, GAIC has reserved its rights with respect to claimed Loss and Costs of Defense incurred with respect to the State Action.

WHEREAS, under the Policy, Claims falling under Insuring Agreement I. are subject to a $5,000 retention, and Costs of Defense incurred by the Boston Society as a result of the State Action now exceed $5,000;

NOW THEREFORE, in consideration of the covenants herein contained and other good and valuable consideration, the parties agree as follows:

1.  Subject to all of the Policy's terms, limitations, and conditions, including, but not limited to, those terms, limitations, and conditions contained in the Policy's Section IV.H., GAIC agrees to advance on behalf of the Boston Society its reasonable and necessary Costs of Defense in excess of $5,000 billed by Todd & Weld with respect to the State Action;

2.  GAIC's maximum liability under the Policy and this Agreement for all Loss, including Costs of Defense, incurred by the Boston Society and the Insureds is subject to the Policy's $1,000,000 Limit of Liability. All amounts advanced by the GAIC shall serve to reduce the $1,000,000 Limit of Liability to the extent they are not in fact repaid.

3.  In the event it is finally established that the GAIC has no liability under the Policy for the Claim against the Boston Society, the Boston Society will repay the GAIC upon demand all Costs of Defense advanced pursuant to this Agreement.

4.  Billing statements of Todd & Weld will be submitted on a monthly basis to GAIC's counsel, Boundas, Skarzynski, Walsh & Black, LLC, 200 East Randolph, 72nd Floor, Chicago, Illinois 60601, Attention: Thomas M. Sheffield, Esq., and GAIC shall pay such statements, or portions thereof which are determined by the GAIC to be Costs of Defense, as defined by the Policy, on a quarterly basis (but agrees to use its best efforts to pay within thirty (30) days of the receipt of the third monthly statement in each quarter), after their submission to GAIC's counsel. The Boston Society agrees to cause defense counsel to submit statements showing: (i) the nature of the services performed; (ii) the amount of time expended on each task billed; (iii) the identity of the attorney or para-professional performing the service; and (iv) the standard hourly rate charged for each attorney or para-professional performing the service. GAIC will evaluate the reasonableness and necessity of the fees and costs billed by defense counsel consistent with the Litigation Billing Guidelines attached to this Agreement.

5.  The Boston Society agrees that it shall not, nor shall it cause defense counsel to, engage the services of any expert for the purpose of rendering expert advice and assistance in its defense of the State Action without the prior consent of GAIC, such consent not to be unreasonably withheld.

2

6.  The Boston Society agrees to cause defense counsel to submit to GAIC's counsel whatever legal opinions, documents, writings, pleadings, motions, memoranda, orders, or other data or information pertaining to the State Action that GAIC or GAIC's counsel may reasonably require. Nothing in this paragraph shall require disclosure of any information protected by the attorney-client privilege, and any information submitted and designated as work-product of counsel shall retain such designation and status notwithstanding its submission to GAIC or GAIC's counsel.

7.  The making of advancements under the Policy by the GAIC to the Boston Society pursuant to this Agreement, and any and all actions or steps taken pursuant thereto, whether by or on behalf of the Boston Society or GAIC, shall be without prejudice to their respective positions regarding their rights, defenses, and obligations under the Policy. In this regard, the GAIC and the Boston Society expressly reserve all of their rights, remedies, and defenses under the Policy and the law. Any payments made by GAIC in accordance with this Agreement shall not be, and shall not be deemed to be, an admission by GAIC of any liability under the Policy. GAIC incorporates by reference, as if fully set forth herein, its reservation of rights contained in GAIC's counsel's letter of March 25, 2004 and the correspondence of December 15, 2004 of Boundas, Skarzynski, Walsh & Black.

8.  The Boston Society and the GAIC each represent and warrant that the person who executes this Agreement on their behalf has full authority to do so.

9.  This Agreement shall be binding upon, and shall inure to the benefit of each party hereto and its respective affiliates, parents, subsidiaries, representatives, successors, and assigns.

10. This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which together shall be deemed to comprise one and the same instrument.

11. No provision of this Agreement shall be construed against GAIC solely because GAIC or its counsel drafted such provision.

12. The Policy and all of its terms, limitations, and conditions remain in full force and effect.

3

WHEREFORE, this Agreement was executed this _____ day of _____, 2005, by:

The Boston Society of the New Jerusalem, Inc./Bostonview Corporation

By: _____

Its: _____

Edward Mackenzie

_____

Thomas Kennedy

_____

Great American Insurance Company

By: _____

Its: _____

P:\GREA01\13215\DRAFT IFA (Boston Society) doc

4

Exhibit 16

# TODD & WELD LLP

ATTORNEYS AT LAW
28 STATE STREET
BOSTON, MASSACHUSETTS 02109

NICHOLAS B. CARTER
Email: ncarter@toddweld.com

TELEPHONE: (617) 720-2626
FACSIMILE: (617) 227-5777
www.toddweld.com

January 12, 2005

BY FACSIMILE – (312) 946-4272
AND CERTIFIED MAIL – RETURN RECEIPT REQUESTED

Thomas M. Sheffield
Boundas, Skarzynski, Walsh & Black, LLC
200 East Randolph Drive, Suite 7200
Chicago, IL 60601

Re:  Insurer:        Great American Insurance Company
     Insureds:       Boston Society of the New Jerusalem, Inc./Bostonview Corporation/
                     Thomas Kennedy/Edward MacKenzie
     Policy No.:     EPP5796942
     Claim No.:      965-584-213-01-1
     Your File No.   13215

Dear Tom:

Thank you for your letter of January 7, 2005. We are disappointed by Great American's refusal not to agree unequivocally and unconditionally to reimburse its insureds – the Boston Society of the New Jerusalem, Inc. ("Church"), Bostonview Corporation ("Bostonview"), Edward MacKenzie ("Mr. MacKenzie") and Thomas Kennedy ("Mr. Kennedy") – for their costs in defending the federal action and the state action. I am also concerned that Great American has not responded to the request of its insureds for reimbursement of their costs to defend the actions commenced by the Massachusetts Attorney General's Office. That request was made in a letter to you and Ms. Pietrucha of Great American dated December 9, 2004, and a response would be appreciated.

In light of your January 7 letter, my clients will consider their options, including a lawsuit against Great American for, *inter alia*, breach of contract, unfair and deceptive business practices in violation of M.G.L. c.93A and unfair insurance practices in violation of M.G.L. c. 176D. However, please be advised that my clients and I have been and will remain available at all times to discuss (either in person or by telephone or other means) these insurance coverage issues.

Time is of the essence in getting the insurance coverage issues resolved and, respectfully, neither your firm nor Great American has acted with due speed thus far. About one month ago, you indicated that you would like to meet in Boston to discuss these coverage issues and you were going to provide me with possible dates after checking with another lawyer at your firm. I told you that early January was available. I still have not heard from you with possible dates to

Thomas M. Sheffield
January 12, 2005
Page 2

meet. If you are genuinely interested in meeting, please contact me with dates. I am available in the next two weeks for a meeting in Boston. I am always available to discuss these matters by telephone.

On the merits, I again disagree with your attempts to distinguish the federal and state actions for coverage purposes. In addition to those points already made in my letter to you dated December 16, 2004, I have the following comments. You seem to argue that each claim of the federal complaint is joined by an insured and therefore that the insured v. insured exclusion applies to the federal action. Your argument is plainly wrong as demonstrated best by Count IV, which was clearly not brought by the Church, Bostonview or any insured. In Count IV, a declaration was sought against the Church and Bostonview that its principal asset – the apartment building – no longer belongs to the Church or Bostonview and should be transferred to the General Convention in escrow until a new church, which is affiliated with the General Convention, is formed in Boston. Great American cannot argue in good faith that this claim was brought by or on behalf of the Church or Bostonview. The idea that either would sue to strip itself of the very building it operates from and depends on for income just does not make sense and is not consistent with a reasonable interpretation of the face of the complaint.

Contrary to your contention, George Chapin was not one of the plaintiffs asserting Count IV, which clearly was brought by the General Convention. However, even if we assume, as you state, that he brought Count IV in his individual capacity on behalf of himself "and not on behalf of the local congregation," Great American would still have an obligation to provide insurance coverage because a claim brought by an individual parishioner on behalf of himself does not fall within the scope of the insured v. insured exclusion. Only claims brought "by, or for the benefit of, or at the behest of the Organization [here, the Church]" are supposedly excluded from coverage.

Great American also overlooks the rule against allocating coverage obligations among claims or parties. "Massachusetts courts have unambiguously adopted the broad rule that an insurer has a duty to defend an entire suit in which any claim is even potentially covered." Dash v. Chicago Ins. Co., 2004 U.S. Dist. LEXIS 17309, *34 (D. Mass. 2004) (discussing Aetna Cas. & Surety Co. v. Cont'l Cas. Co., 413 Mass. 730, 732 n. 1 (1992)). Once Great American has an obligation to defend any claims in the complaint, it must defend all the claims in the complaint. There can be no dispute that Great American has always had an obligation to defend the claims asserted by the General Convention, even if another plaintiff (an alleged "insured") asserted the same claims. Thus, under the rule that an insurer must defend all claims as long as any single claim is potentially covered, Great American has always had an obligation to defend the entire suit brought by the General Convention and other plaintiffs.

This letter is further notice to Great American that it is in breach of its duty to defend and its obligations to provide insurance coverage. The Church, Bostonview, Mr. MacKenzie and Mr. Kennedy demand that Great American immediately agree to satisfy its full obligations to reimburse the insureds for their costs of defense. The failure and refusal of Great American to agree to provide complete and unconditional coverage of the insureds' substantial costs of defense has harmed and is continuing to cause harm to the insureds as they have had to incur

Thomas M. Sheffield
January 12, 2005
Page 3

substantial litigation costs without the assistance of the insurance coverage money that they are entitled to after paying premiums for years to Great American.

Since the federal action commenced in February 2004, the legal bills from Edwards & Angell LLP in connection solely with the defense of the federal case were approximately $375,500. Since February 2004, the legal bills from Todd & Weld LLP for the defense of the insureds total approximately $272,782.45. Great American is obligated to reimburse the insureds these amounts. I believe the legal bills itemizing these costs of defense have already been provided to you, but please let me know if you are missing any bills. Great American is aware that the costs to defend the state action are continuing as plaintiffs have given notice of their intent to file an appeal.

Great American is also obligated to reimburse the Church for the additional amounts it paid to Edwards & Angell LLP for legal defense of the Attorney General's actions. Those legal defense costs were at least $216,631.29. I have enclosed the invoices regarding Edwards & Angell's defense of the Attorney General's actions.

If Great American refuses to make prompt and full reimbursement of these amounts, which total at least $865,000, then the Church, Bostonview, Mr. MacKenzie and Mr. Kennedy will commence suit against Great American and will seek to recover multiple damages and attorney's fees pursuant to G.L. c. 93A, and G.L. 176D.

Please be advised that we are reviewing Great American's proposed Interim Funding and Reservation of Rights Agreement. Based on a very preliminary review of the Agreement, I have several serious concerns about it. Most significantly, Great American is only agreeing to advance the costs of defense in the state litigation, not the federal litigation or the defense of the Attorney General's action, and Great American reserves all of its rights to demand repayment of any amounts advanced. In any event, after we complete our review of the Agreement, I will let you know whether my clients will sign this Agreement or some modification of it. In that regard, it would be helpful if you would forward a copy of the Litigation Billing Guidelines referenced in the proposed Agreement; they were not attached to the Agreement provided to me.

I look forward to hearing from you promptly.

Very truly yours,

Nicholas B. Carter

NBC/mjm
Enclosures (by certified mail)
cc:    Rex Ellis, Chairman of the Board of Trustees of the Boston Society of the New
        Jerusalem, Inc., and Chairman of the Board of Directors of Bostonview Corporation

**U.S. Postal Service**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

# OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Sent To: Thomas M. Sheffield
Street, Apt. No.; Boundas, Skarzynski, Walsh & Black
or PO Box No. 200 East Randolph Drive, Ste7200
City, State, ZIP+4 Chicago, IL 60601

PS Form 3800, June 2002          See Reverse for Instructions

7004 0550 0000 0454 2687

(MacKenzie,

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature M. Garcia<br>X M. Garcia ☐ Agent ☐ Addressee<br>B. Received by (Printed Name)     C. Date of Delivery<br>    JAN 1 9 2005 |
| 1. Article Addressed to:<br><br>Thomas M. Sheffield<br>Boundas, Skarzynski, Walsh<br>& Black, LLC<br>200 East Randolph Drive,<br>Suite 7200<br>Chicago, IL 60601 | D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No |
| | 3. Service Type<br>☒ Certified Mail ☐ Express Mail<br>☐ Registered ☐ Return Receipt for Merchandise<br>☐ Insured Mail ☐ C.O.D. |
| | 4. Restricted Delivery? (Extra Fee) ☐ Yes |
| 2. Article Number<br>(Transfer from service label) | 2687 0454 0000 0550 4002 |
| PS Form 3811, August 2001          Domestic Return Receipt | 102595-02-M-1540 |

Exhibit 17

**BSWB**    Boundas, Skarzynski, Walsh & Black, LLC

ATTORNEYS AT LAW    200 East Randolph Drive  Suite 7200  Chicago, Illinois 60601
                    P: 312 946 4200  F: 312 946 4272  W: www.bswb.com

**CHICAGO**
**NEW YORK**
**LONDON**

Thomas M  Sheffield

Direct Dial: 312 946 4274
tsheffield@bswb com

January 20, 2005

**VIA FACSIMILE    (617) 227-5777**
**AND U.S. MAIL**

Nicholas Carter, Esq.
Todd & Weld, LLP
28 State Street
Boston, Massachusetts  02109

Re:    Non Profit Organization Executive Protection and Employment Practices Liability
       Insurance
       Policy No.:        EPP5796942
       Insured:           BOSTON SOCIETY OF NEW JERUSALEM,
                          INC./BOSTONVIEW CORPORATION
       Location:          BOSTON, MASSACHUSETTS
       Claimants:         THE GENERAL CONVENTION OF THE NEW
                          JERUSALEM IN THE U.S.A., ET AL.
       GAIC Claim No.     965-584-213-01-1
       Our File No.:      13215

Dear Nick:

       Further to our recent conversations, we look forward to meeting with you on Friday,
January 21, 2004 in Boston with regard to this matter.  With that meeting in mind, we wanted to
take a few moments to address some of the issues we have discussed and hopefully provide a
framework for the resolution of the issues involved in this matter.

       First, as you know, Great American has acknowledged that the defense fees related to the
state court action in this matter appear to fall within the coverage afforded under the Great
American Policy.  While there are still issues to understand about this matter in general, and
Great American continues to reserves the rights, Great American agrees to reimburse the Insured
for reasonable and necessary Costs of Defense the Insured has and will continue to incur with
respect to the state court action.  Currently, we have calculated these fees as being $144,888.34.
However, it is our understanding that $56,000.00 of this amount represents billings made by
Joseph Nolan.  As you know, we have requested information regarding Mr. Nolan's role in the
outstanding litigation and in any of the other issues involved in this matter.  Therefore, Great
American cannot yet conclusively determine whether (or, more likely, to what extent)

JAN 2 5 2005

**BSWB**

Mr. Nolan's billings will be reimbursed as Loss (Costs of Defenses) under the Policy. For that reason, Great American's reimbursement of defense fees with respect to the state action currently amounts to $88,888.34, representing the aggregate of invoices for Edwards & Angel and Todd & Weld allocated to the state action. Great American reserves its rights with respect to invoices submitted by Joseph Nolan. We look forward to discussing with you the role of Mr. Nolan in the defense of the underlying litigation and hopefully, we can quickly reach a resolution as to those amounts.

Additionally, we understand that an appeal of the dismissal of the state action may be imminent and may already be in the process of being pursued by the Plaintiffs in the underlying matter. Great American recognizes that this appeal is related to the state action and, as such, Great American will agree to reimburse the reasonable and necessary Costs of Defense incurred by counsel selected by the Insured to respond to an appeal.

With regard to the federal action, Great American has not altered its views with respect to coverage for those amounts. However, Great American seeks opportunities to discuss how differences in opinion with respect to coverage for the federal action may be bridged between Great American and its Insureds. Of course, Great American reserves all rights with respect to coverage for the federal action. Nevertheless, we look forward to discussing with you those issues. Currently, we have calculated fees related to the federal action of $524,741.60, which represents invoices from Edwards & Angel and Todd & Weld of $371,086.49 and $153,655.11, respectively.

In a similar vein, Great American cannot yet confirm coverage for attorney's fees related to an investigation by the Massachusetts Attorney General. It is not clear to us whether an investigation by the Attorney General constitutes a "Claim" under the Great American Policy. Currently, we calculate amounts related to the Attorney General's investigation of $165,863.59, which represent invoices from Edwards & Angel. You have advised us also that the Attorney General continues to investigate the Boston Society of the New Jerusalem and Messrs. Kennedy and McKenzie. We look forward to discussing that investigation with you and understanding more about the Attorney General's activities

As an administrative matter, Great American requests that your firm's work be allocated or assigned to individual file or reference numbers consistent with the actions to which the work relates. We request, going forward, that Todd & Weld submit invoices related to the state action and related appeal and matters relating to the Attorney General's continuing investigation on a separate invoice.

Again, we hope you would recognize that this correspondence is intended to present issues for discussion between Great American and its Insureds. We look forward to the opportunity to discuss all of the invoices involved in this matter and the exposures presented by

**BSWB**

Nicholas Carter, Esq.
Todd & Weld, LLP
January 20, 2005
Page 3

the various cases involving the Insureds.  In the meantime, should you have any questions or require any additional information, please feel free to contact me at the number listed above.

Very truly yours,

BOUNDAS, SKARZYNSKI WALSH &
BLACK, LLC

By: _____
Thomas M. Sheffield

TMS/sw

P:\GREA01\13215\Letters\Carter-Nicholas-03-tms.doc

Exhibit 18

**BSWB**

ATTORNEYS AT LAW

CHICAGO
NEW YORK
LONDON

Boundas, Skarzynski, Walsh & Black, LLC

200 East Randolph Drive  Suite 7200  Chicago, Illinois 60601
P: 312 946 4200  F: 312 946 4272  W: www.bswb.com

Thomas M. Sheffield

Direct Dial: 312 946 4274
tsheffield@bswb.com

January 28, 2005

**VIA FACSIMILE**    (617) 227-5777
**AND U.S. MAIL**

Nicholas Carter, Esq.
Todd & Weld, LLP
28 State Street
Boston, Massachusetts  02109

Re:    Non Profit Organization Executive Protection and Employment Practices Liability
       Insurance
       Policy No.:           EPP5796942
       Insured:             BOSTON SOCIETY OF NEW JERUSALEM,
                            INC./BOSTONVIEW CORPORATION
       Location:            BOSTON, MASSACHUSETTS
       Claimants:           THE GENERAL CONVENTION OF THE NEW
                            JERUSALEM IN THE U.S.A., ET AL.
       GAIC Claim No.       965-584-213-01-1
       Our File No.:         13215

Dear Nick:

Thank you for your letter of January 25, 2004. We wish to respond and address, below,
the Federal Litigation, the State Attorney General's investigation, and Judge Nolan's fees and
costs. Please note that we continue to handle this matter pursuant to a reservation of Great
American Insurance Company's rights and defenses under the Policy and the law. We
understand the Insureds also reserve their rights.

**The Federal Litigation**

First, as I mentioned to you during our meeting of January 21, 2004, Great American has
previously taken the position that the Federal litigation involved in this matter was not afforded
coverage, either for indemnity or for a defense, by virtue of the application of the insured-versus-
insured exclusion. This remains Great American's position and we have not yet learned
anything about this matter that leads the Insurer to conclude that the insured-versus-insured
exclusion does not apply to the federal court complaint. It is clear that George Chazin is

JAN 3 1 2005

**BSWB**

Nicholas Carter, Esq.
Todd & Weld, LLP
January 28, 2005
Page 2

included as a plaintiff in each count of the Federal litigation, either derivatively or as a successor in interest to the assets of the local congregation.

You have referred me to Mr. Chapin's deposition transcript to resolve this issue. In particular, your letter states that, "the General Convention (a "non-insured") has been leading, orchestrating and paying for this lawsuit. George Chapin is only involved at the invitation of the General Convention."

Mr. Chapin's deposition transcript also indicates that Mr. Chapin, and others within the Local Congregation, requested that the National and State organizations conduct an investigation regarding the practices of Reverend Ellis. Additionally, Mr. Chapin and others within the Local Congregation approached the Attorney General's office regarding the facts and circumstances involved in this matter. While you contend that Mr. Chapin was merely a figurehead for the litigation commenced by the National and State Organizations, his testimony indicates that he and other members of the Local Congregation were very active in seeking resolution to the issues that troubled them. Mr. Chapin, regardless of whether he is paying the attorneys, has been instrumental in assembling information and pursuing his complaints in the Federal court and with the Attorney General. Great American therefore, respectfully, rejects your suggestion that George Chapin was not a true plaintiff in the Federal Litigation. He is a named plaintiff in every count of the Federal Complaint and the facts indicate that he and other members of the Local Congregation were actively involved in bringing the action.

Great American understands that Massachusetts determines an insurer's duty to defend by comparing the language of the policy with the allegations contained in the complaint. *See Doe v. Liberty Mut. Ins. Co.*, 667 N.E.2d 1149, 1152 (Mass. 1996); *Liberty Mut. Ins. Co. v. SCA Servs., Inc.*, 588 N.E.2d 1346, 1347 (Mass. 1992); *see also Green v. Travelers Insurance Company*, 51 Mass.App.Ct. 1103, 743 N.E.2d 394 (2001); *TransAmerica Insurance Co. v. KMS Patriots, L.P.*, 52 Mass.App.Ct. 189 (2001). "[T]he process is one of envisaging what kinds of losses may be proved as lying within the range of the allegations of the complaint, and then seeing whether any such loss fits the expectation of protective insurance reasonably generated by the terms of the policy." *Liberty Mut.*, 588 N.E.2d at 1347 (citations omitted); *see Sterlite Corp. v. Continental Cas. Co.*, 458 N.E.2d 338, 341 (Mass. 1984). This rule, however, is not unqualified. An insurer must consider "facts that are known or [are] readily knowable by" it in determining its duty to defend. *Desrosiers v. Royal Ins. Co. of Am.*, 468 N.E.2d 625, 627-28 (Mass. 1984); *see Boston Symphony Orchestra v. Commercial Union Ins. Co.*, 545 N.E.2d 1156, 1158 (Mass. 1989).

In this case, Mr. Chapin is a plaintiff with regard to every count. Great American recognizes that "the insurer has a duty to defend the entire lawsuit if it 'has a duty to defend any

**BSWB**

of the underlying counts in the complaint.'" *Dash v. Chicago Ins. Co.*, 2004 WL 1932760 at 8 (D. Mass. 2004) *citing Liberty Mutual v. Metropolitan Life*, 260 F.3d 54 (1st Cir. 2001). More:

> Massachusetts courts have not definitively determined whether an insurer that has a duty to defend a covered, or potentially covered, claim must additionally defend claims alleged in the same suit which clearly are not covered. . . . Although Massachusetts law does not yet provide an answer, the weight of authority places the duty to defend all counts on an insurer which has a duty to defend *at least one count* of the complaint, barring a contrary agreement with the insured." *(emphasis added)*

*Dash v. Chicago Ins. Co.*, 2004 WL 1932760 at 8 (D. Mass. 2004) *citing Aetna Casualty and Surety Co. v. Continental Casualty Co.*, 413 Mass. 730, 732 (1992). However, no duty to defend exists with respect to *any* count, because *every* count is specifically excluded by operation of the insured-versus-insured exclusion. Great American therefore continues to deny coverage for the Federal Complaint.

### The Massachusetts State Attorney General's Investigation

Additionally, I also mentioned to you during our meeting that there was an issue regarding the State Attorney General's investigation into the local congregation. Briefly restated, the issue revolves around whether the Attorney General's investigation constitutes a "Claim" for which coverage would ostensibly be available under the terms of the Policy. As you know, the Policy defines "Claim" as follows:

> "**Claim**" shall mean: (1) any proceeding initiated against an **Insured**, including any appeals therefrom, before (a) any governmental body which is legally authorized to render an enforceable judgment or order for money damages or other relief against such **Insured**, or (b) the Equal Employment Opportunity Commission, or any similar governmental body whose purpose is to address employment practices; or (2) any written demand seeking money damages for a **Wrongful Act**.

An investigation commenced by the Attorney General or other regulatory agency is not a proceeding initiated before a governmental body which is legally authorized to render an enforceable judgment or order for money damages or other relief. The Civil Investigative Demand issued by the Office of the Attorney General on November 13, 2003 does not meet any of the applicable requirements under the Policy's definition of "Claim" and, for that reason, no coverage is a available for that investigation. Like the insured-versus-insured issue discussed above, we have seen nothing in the materials you have forwarded which alter our conclusions

**BSWB**

Nicholas Carter, Esq.
Todd & Weld, LLP
January 28, 2005
Page 4

that the Attorney General's investigation does not properly describe a "Claim" under the Policy for which coverage would be afforded.

In your correspondence of December 9, 2004, you mentioned that on or around June 14, 2004, the Attorney General filed a complaint in the Superior Court for Suffolk County for the limited purpose of having a consent order, which had been negotiated between the Attorney General's office and the Local Congregation (the "Consent Order"). It is our understanding that the action in the Superior Court for Suffolk County was thereafter immediately dismissed by the parties, in light of the Consent Order being issued.

The complaint filed in Suffolk County would constitute a "Claim" under the Policy and therefore, Great American accepts that matter for coverage under the Policy. We are reviewing the defense fee invoices related to that action and, once we tabulate those amounts, we will advise you immediately.

Additionally, it is our understanding that the Attorney General's office has recently resumed its investigation of the Local Congregation. We have not seen any materials (e.g. Civil Investigative Demands, subpoenas, or other documents) related to a recent resumption of the investigation and we ask that you provide any such materials at your earliest convenience. If our understanding regarding any of these facts is incorrect, kindly advise us immediately. In light of the facts as we understand them, Great American reserves all its rights, remedies and defenses related to this continued investigation. Of course, for the reasons described above, an investigation by the Attorney General pursuant to a Civil Investigative Demand does not constitute a "Claim" under the Policy. Nevertheless, Great American would like to understand more about the continued investigation to understand whether it bears a significant relationship to the Consent Order proceeding of June of 2004.

Notwithstanding the relationship between the Consent Order proceeding and any continuing investigation, it does not appear that the activities of the Insureds after the Consent Order was entered encompass matters for which coverage is afforded under the Policy. To explain, fees associated with efforts being made to comply with the Consent Order do not constitute Loss under the Policy. Specifically, "Loss" is defined, under Section III (as modified by Endorsement No. 3) as follows:

> "Loss" shall mean settlements and judgments, including punitive or exemplary damages or the multiple portion of any multiplied damage award, and subject to the provisions of Section V and Section VI, **Costs of Defense** incurred by the **Insured**, provided always, however, **Loss** shall not include taxes, criminal or civil fines or penalties imposed by law, or any matter which may be deemed uninsurable under the law pursuant to which the Policy shall be construed. It is

**BSWB**

understood and agreed that the enforceability of the foregoing coverage shall be governed by such applicable law which most favors coverage for punitive or exemplary damages or the multiple portion of any multiplied damage award.

The Consent Order prescribes a number of procedures the Local Congregation will follow in order to be in compliance with Massachusetts State law. In particular, the Consent Order provides the following:

1. The Board of Trustees will adopt policies and procedures for addressing conflicts of interest, meeting notice procedures, and related party transactions;

2. The Local Congregation, Bostonview Corporation and/or Harborview shall not transfer or substantially encumber capital assets without notice to the Attorney General;

3. The Board of Trustees shall not convey any asset of the Local Congregation unless certain control procedures are followed and the transaction is aligned with the mission of the Local Congregation;

4. The Board of Trustees and officers of the Local Congregation shall operate in conformance with the by-laws of the Local Congregation;

5. The Local Congregation shall operate in conformance with the requirements of the Internal Revenue Code (particularly 501(c)(3));

6. The Local Congregation shall hire an interim chief financial officer (subject to the approval of the Attorney General) to monitor and control financial and accounting transactions; and

7. The financial officer shall provide the Attorney General with regular (Quarterly) financial reports;

Amounts expended by the Insured in compliance with the Consent Order do not appear to involve "Loss" under the Policy. Those amounts appear to involve administrative procedures and controls which relate directly to the Local Congregation's and Bostonview's daily business operations—none of which properly describe "Loss" to which the Policy would respond. Moreover, the definition of "Loss" specifically excludes amounts for criminal or civil fines or penalties. It appears that the Consent Order involves such a civil penalty. Great American therefore reserves its rights, remedies and defenses with respect to the nature of the investigation or proceedings which have taken place or are taking place since the Consent Order was issued.

Mr. Nolan's Fees and Costs

Last Friday in Boston, you and I discussed the role of Jospeh Nolan in the State Litigation. Based on our discussion, it is my understanding the Mr. Nolan was engaged to

**BSWB**

Nicholas Carter, Esq.
Todd & Weld, LLP
January 28, 2005
Page 6

represent the Local Congregation and Bostonview Corporation after Edwards & Angell was terminated by the Insureds. We understand that Mr. Nolan reviewed depositions and other materials in order to prepare for and assist with the motion to dismiss the state court complaint in November 2004. Great American accepts Mr. Nolan's fees as relating to the State Litigation. Great American agrees to reimburse the Insured for reasonable and necessary Costs of Defense the Insured has and will continue to incur with respect to the state court action and appeal. As we discussed, however, we are concerned by the potential for duplication and the lack of detail evidenced in Mr. Nolan's invoices. Please provide additional information regarding his activities in the State Litigation.

With respect to the State Litigation, we have not yet learned whether the plaintiffs have pursued an appeal to the trial court's dismissal of that action. We ask that you kindly provide us with information including any appellate briefs, notices or other materials related to this issue.

In an effort to compromise different views concerning the Policy's coverage, Great American is willing to reimburse reasonable and necessary fees incurred defending the State Action and those incurred in the context of the Consent Order proceedings. We recognize also that you have pressed for coverage for other fees, namely those incurred defending the Federal Action, as well as those incurred responding to the Attorney General's investigation. If you believe a compromise on any of these points is possible, then please share with us your further thoughts. Great American is willing to consider any reasonable compromise you propose. As you know, Great American is currently processing for payment invoices relating to the State Litigation. Once that process has been completed, we will forward that draft to your attention.

In the meantime, should you have any questions or require any additional information, please feel free to contact me at the number listed above.

Very truly yours,

BOUNDAS, SKARZYNSKI WALSH & BLACK, LLC

By: _____
Thomas M. Sheffield

TMS/sw
P:\GREA01\13215\Letters\Carter-Nicholas-04-tms.doc