UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| BOSTON SOCIETY OF THE NEW JERUSALEM, INCORPORATED, BOSTONVIEW CORPORATION, EDWARD MACKENZIE, and THOMAS KENNEDY,<br><br>      Plaintiffs and Counterdefendants,<br><br>v.<br><br>GREAT AMERICAN INSURANCE COMPANY,<br><br>      Defendant and Counterplaintiff. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | CIVIL ACTION NO. 05-CV-10494-WGY |

## DEFENDANT GREAT AMERICAN'S RESPONSE TO PLAINTIFFS' LOCAL RULE 56.1 STATEMENT IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Defendant, Great American Insurance Company ("Great American"), pursuant to Local Rule 56.1, submits its following response to Plaintiffs' Local Rule 56.1 Statement in Support of Their Motion for Summary Judgment.

1.     Admitted in part. Great American denies that the Policy covers the underlying Claims in issue.

2.     Admitted.

3.     Admitted.

4.     Admitted.

5.     Admitted.

6.     Admitted.

7.     Admitted.

8.     Admitted.

9.     Admitted.

10.     Admitted in part.  According to the allegations of the underlying complaint, the "dissatisfied" parishioners were dissatisfied not because they had lost control of the Church to a new generation of parishioners, but because they suspected that MacKenzie and Kennedy were misappropriating Church funds for their personal benefit, and were exercising undue influence on the Church's pastor, Reverend Ellis, who appeared to be suffering increasing mental instability.  (Exhibit 2 to Plaintiffs' Local Rule 56.1 Statement in Support of Their Motion for Summary Judgment ("Ex. 2 to Pltfs.' LR 56.1 Statement") ¶¶ 4, 6, 28, 29, 32).

11.     Admitted in part.  According to the allegations in the underlying complaint, the "disgruntled" members did not "falsely report" that Ellis was mentally unstable, as they allegedly witnessed instances of his unbalanced behavior.  (Ex. 2 to Pltfs.' LR 56.1 Statement ¶ 29).

12.     Admitted in part.  According to the allegations in the underlying complaint, the Board did not issue an "ultimatum" requiring Ellis to resign or be under the General Convention's "authority and daily supervision"; rather, the Board offered Ellis three options:  (1) be closely supervised for six months; (2) be suspended for one year; or (3) have his credentials as a Swedenborgian minister revoked.  (Ex. 2 to Pltfs.' LR 56.1 Statement ¶ 94).

13.     Admitted in part.  According to the allegations in the underlying complaint, MacKenzie and Kennedy "forced the Church to become disaffiliated with the Denomination." (Ex. 2 to Pltfs.' LR 56.1 Statement ¶¶ 100, 102)

14.     Admitted.

15.     Admitted in part.  According to the allegations in the underlying complaint, MacKenzie and Kennedy sought disaffiliation to prevent the General Convention from "foil[ing] their plans to continue to control the Church and its apartment house."  (Ex. 2 to Pltfs.' LR 56.1

Statement ¶ 100)  As noted in that pleading, without the oversight of the General Convention, MacKenzie and Kennedy may take actions, such as receiving improper personal benefits, moving their personal businesses into the Church, and perhaps selling its apartments as condominiums, that impact, and are inconsistent with, the Church's governance, finances, and religious mission.  (Ex. 2 to Pltfs.' LR 56.1 Statement ¶¶ 107-110)

16.    Admitted.

17.    Denied.  Great American denies that the General Convention sought to "acquire control" over the Church's assets.  Rather, in the Federal Lawsuit, the General Convention and the other plaintiffs sought to enforce a Church bylaw that purportedly required the Church's assets, upon disaffiliation, to be transferred to the General Convention to be held in escrow until a new church, affiliated with the General Convention, could be formed.  (Ex. 2 to Pltfs.' LR 56.1 Statement ¶¶ 144, 146, Prayer for Relief ¶ 3).

18.    Admitted in part.  Great American admits that the General Convention and the other plaintiffs brought Count IV of the Federal Lawsuit to enforce a Church bylaw, but states that whether there was a "misconstruction" of the bylaw is an unresolved question of law. Although the state court dismissed the claim, that dismissal is, according to the Insureds, on appeal.  (See Memorandum in Support of Plaintiffs' Motion for Summary Judgment p. 27 n.11)

19.    Admitted in part.  Great American nor the Insureds know whether Count V has "insurmountable" First Amendment and standing problems, as this is, at a minimum, a mixed question of law and fact, and as the underlying plaintiffs' appeal of the dismissal of that claim is pending before the Massachusetts Court of Appeals.  (Id.)

20.    Admitted in part.  Great American admits that Chapin brought *all* of the claims in the Federal Lawsuit and that they all addressed alleged fraud and misappropriation of Church

assets. Specifically, the remaining claims in the Federal Lawsuit were three counts alleging RICO violations by Kennedy and MacKenzie (Counts I-III); two counts against Kennedy and MacKenzie asserting derivative claims for breach of fiduciary duties owed to the Church (Count VI) and to Bostonview (Count VII); a derivative claim against Kennedy and MacKenzie for fraud (Count VIII); and a derivative claim against Kennedy and MacKenzie for unfair and deceptive acts under Mass. Gen. Law ch. 93A § 2 (Count IX). (Id. ¶¶ 111-186) (Ex. 2 to Pltfs.' LR 56.1 Statement Counts I-III, pp. 20-21, 23, Counts VI-IX. pp. 26-29).

21.    Denied. Not "all" of Chapin's claims contained the language quoted by the Insureds in paragraph 21 of their Statement of Facts. Nonetheless, all of the claims in the Federal Lawsuit were brought (a) by Chapin and (b) for the benefit of the Church or Bostonview and those who would benefit indirectly. (Ex. 2 to Pltfs.' LR 56.1 Statement Counts I-IX, ¶¶ 112, 122, 132, 141, 147, 155, 163, 171, 180)

22.    Denied. Chapin was a party to Count IV. (Ex. 2 to Pltfs.' LR 56.1 Statement ¶ 141, Prayer for Relief ¶ 2)

23.    Admitted.

24.    Admitted.

25.    Admitted.

26.    Admitted in part. Great American admits that it disclaimed coverage, but denies that the Insureds were "entitled" to any coverage under the Policy.

27.    Admitted in part. Great American admits that the Insureds were represented by Edwards & Angell LLP and by Todd & Weld, LLP but denies that Great American had any obligation to provide the Insureds any counsel, or that the Insureds were "forced" to do anything.

-4-

28.    Admitted in part. Great American denies that the Insureds accurately summarize this Court's ruling. This Court did not find "no past pattern of racketeering activity" but only that the underlying plaintiffs' "allegations of continuity" of related predicate acts spanned only "fourteen months," which "fall short" of federal requirements. (Ex. 7 to Pltfs.' LR 56.1 Statement p. 3) Similarly, this Court did not rule that because of the "Consent Judgment and the Attorney General's active oversight," that "there could be no basis for a claim of future racketeering activity," but only that this Court did not need to credit the underlying plaintiffs' "bald assertions" of the Insureds' "threat of repeated mismanagement." (Id.)

29.    Admitted.

30.    Denied. While the Federal Lawsuit and the State Lawsuit contain many of the same averments, they are not identical, as the State Lawsuit contains additional averments not contained in the Federal Lawsuit. (See, e.g., Ex. 8 to Pltfs.' LR 56.1 Statement ¶¶ 45, 105-06)

31.    Admitted in part. Great American admits that Count I of the State Lawsuit is substantially similar to Count IV of the Federal Lawsuit. However, Great American denies that the General Convention sought to "gain control" over the Church's assets. Rather, in those Counts I and IV, the General Convention sought to enforce a Church bylaw that purportedly required the Church's assets, upon disaffiliation, to be transferred to the General Convention to be held in escrow until a new church, affiliated with the General Convention, could be formed. (Ex. 2 to Pltfs.' LR 56.1 Statement ¶¶ 144, 146, Prayer for Relief ¶ 2)

32.    Denied. While the Federal Lawsuit and the State Lawsuit contain many similar averments, they are not identical, as the State Lawsuit contains additional averments not contained in the Federal Lawsuit. (See, e.g., Ex. 8 to Pltfs.' LR 56.1 Statement ¶¶ 45, 105-06)

33.    Admitted.

-5-

34.    Admitted.

35.    Admitted in part.  Great American admits only that in a December 15, 2004 letter, in an effort to resolve the parties' coverage dispute and to avoid coverage litigation, Great American offered to defend the State Lawsuit subject to a full reservation of rights and on the condition that the Insureds execute an interim funding agreement.  (Ex. 13 to Pltfs.' LR 56.1 Statement pp. 4-5).  Great American also admits that its settlement proposal did not include an offer to pay for the defense of the Federal Lawsuit.  (Id.)

36.    Admitted in part.  Great American admits that it offered to defend the State Lawsuit (under a reservation of rights and subject to an interim funding agreement) a week after the dismissal of the State Lawsuit.  Great American denies, however, that at the time it extended its compromise offer, it was aware of the dismissal or knew its financial exposure arising from the State Lawsuit was likely to be "very limited."

37.    Admitted.

38.    Admitted in part.  Great American admits the Public Charities Division of the Attorney General's Office secured court approval to launch an investigation into the financial operations of the Church pursuant to its authority under Mass. Gen. Laws, ch. 12, §8H.  (Ex. 19, 20 to Pltfs.' LR 56.1 Statement)  Great American denies that the allegations made to the Attorney General were "reckless and unfounded," as they led to a lawsuit filed by the Attorney General that, in turn, led to a Consent Judgment entered into voluntarily by the Insureds.  (Ex. 21 to Pltfs.' LR 56.1 Statement)

39.    Admitted.

40.    Admitted.

41.    Admitted.

-6-

42.    Admitted.

43.    Admitted.

44.    Admitted.

45.    Admitted in part. By letter dated December 9, 2004, the Insureds' counsel provided notice of, and tendered for coverage under the Policy, "two separate proceedings" against the Church initiated by the Massachusetts Attorney General. (Ex. 22 to Pltfs.' LR 56.1 Statement) Those matters consisted of an investigation by the Attorney General, commenced by a Civil Investigative Demand ("CID") issued to the Church more than a year earlier, on November 13, 2003, and a lawsuit against the Church by the Attorney General, commenced by the filing in Massachusetts state court of a complaint on June 14, 2004, and concluded by the entry of an agreed Consent Judgment on June 16, 2004. (Id.) That December 9, 2004 letter constituted the first tender to Great American of the CID, the Attorney General's action, or the June 16, 2004 Consent Judgment that had resolved the action nearly six months earlier. (Affidavit of Thomas M. Sheffield, Esq. ("Sheffield Aff.") ¶ 5))

46.    Admitted in part. Great American admits that, in a January 20, 2005 letter, it acknowledged receipt of the CID, the Attorney General's complaint and the Consent Judgment, but denies that, in a January 28, 2005 letter, it disclaimed coverage for nearly all parts of the Attorney General's Action. Rather, in its January 28, 2005 letter, Great American denied coverage for the Attorney General's *investigation* because it did not constitute a "Claim" under the Policy, but agreed that there may be coverage for the Attorney General's *action*, because it did appear to constitute a "Claim." (Ex. 18 to Pltfs.' LR 56.1 Statement)

47.    Admitted in part. Great American admits that the time between the filing of the Attorney General's action and the Insureds' voluntary entry into the Consent Judgment was two

days, but denies that it offered to reimburse those Costs of Defense for that reason. Great American agreed to reimburse those Costs of Defense because the Attorney General's action was a Claim as defined by the Policy, whereas the Attorney General's issuance of the CID was not. (Ex. 18 to Pltfs.' LR 56.1 Statement)

48.     Denied. Great American did, upon receiving correspondence from the Insureds' counsel, reconsider its position on defense of the Attorney General investigation and the Federal Lawsuit, but reaffirmed its position as correct. (Ex. 18 to Pltfs.' LR 56.1 Statement)

49.     Admitted in part. Great American admits that by letters dated May 13, 2004, December 16, 2004, and January 12, 2005, the Insureds submitted for payment by Great American numerous billing statements issued by various law firms that purportedly reflected legal fees and expenses incurred by the Insureds in defense of the Federal Lawsuit, the State Lawsuit, the Attorney General's investigation, or the Attorney General's action. (Ex. 5, 14, 16 to Pltfs.' LR 56.1 Statement) Great American denies that these billing statements contain exclusively costs incurred in the defense of these matters. (Sheffield Aff. ¶ 8)

50.     Denied. Certain entries on the billing statements the Insureds tendered to Great American reflect legal fees and expenses that bear no—or no apparent—relationship to the defense of the Federal Lawsuit, the State Lawsuit, the Attorney General's investigation, or the Attorney General's action. (Sheffield Aff. ¶ 8) Moreover, the fees and expenses incurred by the Insureds in the Attorney General's investigation are not covered because that investigation was not a "Claim" under the Policy. (Id.) Accordingly, even in the event of coverage, the "Costs of Defense" incurred by the Insureds and reimbursable under the Policy are far lower than alleged. (Id.)

-8-

51.     Admitted in part.  Great American admits that it has not reimbursed the Insureds'
defense costs in the State Lawsuit, but denies that it ever unconditionally agreed to do so.
Rather, in an effort to compromise the parties' disputes over coverage and to avoid coverage
litigation, Great American offered to pay the defense of the State Lawsuit, subject to an interim
funding agreement and under a full reservation of rights.  (Ex. 13, 15 to Pltfs.' LR 56.1
Statement)  The Insureds rejected that offer.  (Ex. 16 to Pltfs.' LR 56.1 Statement)

52.     Denied.  Great American did not acknowledge that the State Lawsuit triggered its
duty to defend; rather, Great American only offered to pay the State Lawsuit defense costs in an
attempt to compromise the coverage dispute and avoid coverage litigation.  (Ex. 13, 15 to Pltfs.'
LR 56.1 Statement)  Great American has consistently reserved its right to contest coverage due
under the Policy for either the Federal or State Lawsuit.  (Ex. 13, 15, 17, 18 to Pltfs.' LR 56.1
Statement)

53.     Admitted.

### DEFENDANT GREAT AMERICAN INSURANCE COMPANY'S
### LOCAL RULE 56.1 STATEMENT IN OPPOSITION TO
### PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Great American, pursuant to Local Rule 56.1, submits the following statement of facts in
opposition to Plaintiffs' Local Rule 56.1 Statement in Support of Their Motion for Summary
Judgment.  Great American has provided separately a Local Rule 56.1 Statement in Support of
Its Motion for Summary Judgment.  Great American incorporates the facts provided in that
document as if they were separately set forth herein.

1.     The Policy defines "Cost of Defense" to include "any reasonable and necessary
legal fees and expenses incurred in defense of any Claim."  (Ex. 2 to Pltfs.' LR 56.1 Statement
§III.H )

-9-

2.     In letters dated May 13, 2004, December 16, 2004, and January 12, 2005, the Insureds submitted for payment by Great American numerous billing statements issued by various law firms that purportedly reflected legal fees and expenses incurred by the Insureds in defense of the Federal Lawsuit, the State Lawsuit, the Attorney General's investigation, or the Attorney General's action. (Exhibits 5, 14, 16 to Pltfs.' LR 56.1 Statement)

3.     The Insureds demanded payment for all of the billing statements submitted. (Exhibit 16 to Pltfs.' LR 56.1 Statement) While some of the entries on those billing statements appear to relate to the defense of the Chapin Federal Lawsuit, the Chapin State Lawsuit, the Attorney General's investigation, or the Attorney General's action, others bear no—or no apparent—relationship to the defense of any of those matters. (Sheffield Aff. ¶ 8) For example, the billing statements contain numerous time entries pertaining to insurance coverage work by counsel, such as research and analysis of whether the Policy's Insured versus Insured Exclusion might apply. (Id.) The billing statements also refer, for additional examples, to communications between counsel and the Boston Globe—which sounds like public relations work, rather than defense work—and a number of time entries concern issues surrounding a mortgage taken by Rev. Steven Ellis, the Church's pastor. (Id.) The Insureds have not explained their theory as to why these and other billings qualify as "Costs of Defense" reimbursable under the Policy. (Id.)

Dated: August 10, 2005                    Respectfully submitted,

                                          GREAT AMERICAN INSURANCE COMPANY

                                          Barbara A. O'Donnell BBO# 544458
                                          Stephen J. Abarbanel BBO# 010110
                                          ROBINSON & COLE LLP
                                          One Boston Place
                                          Boston, MA  02108-4404
                                          (617) 557-5900

**Of Counsel:**

Peter F. Lovato III
Ellen D. Jenkins
BOUNDAS SKARZYNSKI WALSH & BLACK, LLC
200 East Randolph Drive, Suite 7200
Chicago IL 60601
(312) 946-4200
(312) 946-4272 (fax)

> Counsel for Defendant, Great American Insurance
> Company

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of August, 2005, I have served the foregoing document upon all parties to this action by sending a copy by hand ~~or by first class mail, postage prepaid,~~ to plaintiffs' counsel of record in his action:

> Nicholas B. Carter, Esq.
> Todd & Weld LLP
> 28 State Street
> Boston, MA  02109
>
> Barbara O'Donnell