UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| BOSTON SOCIETY OF THE NEW JERSALEM, INCORPORATED , BOSTONVIEW CORPORATION, EDWARD MACKENZIE, and THOMAS KENNEDY,<br><br>    Plaintiffs/Counterclaim Defendants,<br>v.<br><br>GREAT AMERICAN INSURANCE COMPANY,<br><br>    Defendant/Counterclaim Plaintiff. | C.A. NO. 05-CV-10494-WGY |

## PLAINTIFFS' REPLY TO DEFENDANT GREAT AMERICAN INSURANCE COMPANY'S OPPOSITION TO SUMMARY JUDGMENT AND OPPOSITION TO ITS CROSS-MOTION FOR SUMMARY JUDGMENT

Nearly one year after acknowledging that it had a duty to defend the State Lawsuit and one and one-half years after receiving notice of the virtually identical Federal Lawsuit, Great American has still not paid a dime to the Church to cover their enormous defense costs, which in those two lawsuits alone have already exceeded $730,000. Nor has Great American paid anything to the Church to cover its substantial costs to respond to and defend against the Attorney General's Action, which bring the Church's total defense costs to nearly $1,000,000 – Great American's policy limit. Rather than agree to provide a defense to these claims without a reservation of rights, which it unequivocally has an obligation to do under the policy, Great American has chosen to withhold payment and dispute coverage, putting substantial strain on the Church's cash flow and impeding its religious mission. Great American's stubborn refusal to pay these defense costs is

patently unreasonable and constitutes bad faith insurance practices, especially where it already acknowledged (with a reservation of rights) that it was obligated to defend the State Lawsuit and part of the Attorney General's Action.

## **ARGUMENT**

Great American's strained arguments in opposition to Plaintiffs' motion for summary judgment, and in support of its own cross-motion, fail to provide any reasonable basis for its refusal to provide coverage.

I.    The Insured v. Insured Exclusion Does Not Apply To The Federal Lawsuit Or The State Lawsuit.

Great American argues that the Federal and State Lawsuits constitute nothing more than an "internecine squabble" within the Church (Opp.[1] at 2)  and that the "Insured v. Insured" exclusion applies because all of the claims in both Lawsuits were asserted by or for the benefit of the Church.  This contention is patently false.  The Federal and State Lawsuits are essentially property claims brought *against* the Church by an unaffiliated organization, the General Convention, which is interested solely in gaining control of the Church's real estate and other assets.  The General Convention is *not* an Insured under the Church's policy with Great American and, therefore, the Insured v. Insured exclusion cannot apply.

Contrary to Great American's allegations (Opp. at 11), the property claims -- Count IV of the Complaint in the Federal Action and Count I of the Amended Complaint in the State Action – were brought exclusively by and for the benefit of the General Convention.  This is plain from the face of the pleading.  The prayers for relief at the end of each property claim state: "Thus, **the Denomination asks** that the Court declare that

---

1 This abbreviated citation refers to Great American's Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment and in Support of Its Cross-Motion for Summary Judgment.

<u>it</u> is entitled to hold the assets of the Church." (<u>See</u> Pls.' L.R. 56.1 Statement, Exs. 2 and 8 (emphasis added)). Moreover, while the other general prayers for relief at the end of the Complaint and the Amended Complaint seek relief on behalf of the "Plaintiffs," the second general prayer for relief is brought exclusively by and for the benefit of the General Convention and requests that, as to Count IV of the Complaint and Count I of the Amended Complaint, the Court declare "that the Denomination is entitled to hold the assets of the Church."[2] This unequivocal language on the face of the pleading demonstrates, beyond any doubt, that the General Convention is the sole party bringing the property claim against the Church.

This reading of the allegations in the pleading make sense too as the General Convention is the only party that arguably has any claim to the Church's property, based on the Church's (former) by-law which provided that the General Convention should hold the Church's assets if the Church "ceased to exist." George Chapin certainly has no basis to claim entitlement to the Church's property. <u>See Weaver v. Wood</u>, 425 Mass. 270, 275-276 (1997) (general parishioner has no standing to assert claim concerning ownership or proper use of Church assets). Nor does he actually assert such a property claim. Great American's argument that he does, is merely an insurer's self-serving attempt to avoid coverage. Moreover, the Association has no claim, and makes no claim, to the Church's property.[3]

Thus, based on the language of the pleading, it is clear that the General Convention alone brought the property claims against the Church. Because the General

---

[2] The second general prayer for relief in the State Action is a copy of the prayer for relief in the Federal Action and, therefore, incorrectly refers to "Count IV," when it should refer to "Count I."

[3] Even if the Association did have a claim, it is not an Insured and, therefore, its claim would not trigger the Insured v. Insured exclusion.

Convention is not an Insured, Great American's argument that the Insured v. Insured exclusion applies is not only wrong, but frivolous.

II.    The Argument That The General Convention Brought Its Claim *On Behalf Of* The Church Or Some Ill-Defined Successor Cannot Be Justified Based On A Plain Reading Of The Complaint.

Even if the General Convention brought the property claims against the Church, Great American argues that the Insured v. Insured exclusion still applies because Great American brought the claims "for the benefit of the Church, or its successor in interest, or both." (Opp. at 11)  This argument is Dr. Seuss-like in its logic given that the General Convention's goal was to take property *from* the Church and, perhaps, give it to another, rival religious entity.  Had the General Convention succeeded, that entity could hardly be considered the Church's successor-in-interest, merely the recipient of the Church's property.  The Church itself would still exist with its legal identity intact and its ability to operate as a public charity in Massachusetts unaffected.  Great American's argument is belied by any reasonable reading of the Complaint.

It is also belied by any reasonable reading of the insurance policy.  The Insured v. Insured exclusion applies to claims "made against any Insured … by, or for the benefit of, or at the behest of the Organization or a Subsidiary … *or any person or entity which succeeds to the interest of the Organization or a Subsidiary.*" (See Pls.' L.R. 56.1 Statement, Ex. 1, Section IV.H (emphasis added))  The obvious intent of this language is to make sure the exclusion applies if the Insured is succeeded legally by another entity, which shares an identical legal interest with the Insured.  It does not apply where an unrelated legal entity is formed, and a claim is brought to take property from the Insured for the benefit of the other entity.  Indeed, Great American undoubtedly would argue that

4

the other entity, under those circumstances, would not be considered a successor to the

Insured's interests under the insurance policy. Therefore, there would be no reason for

the Insured v. Insured exclusion to reach such an entity, since Great American could

disclaim coverage on the more fundamental ground that the entity is not an Insured or

covered by the Insured's policy. This Court should not credit Great American's

nonsensical reading of the Insured v. Insured exclusion.

In crafting this argument to avoid coverage, Great American awkwardly tries to

ignore the real reason for the General Convention to bring the suit, which was to seize the

assets of the Church after it rightfully ended its loose affiliation with the Convention.

This was nothing less than an aggressive assault on the Church in an attempt to grab its

assets and undoubtedly to deter other affiliated Swedenborgian churches from

disaffiliating. The General Convention's legal attack on the Church cannot be construed,

by any stretch of the imagination, as taken in support of the Church (or any non-existing

legal successor in interest).

III.    The Policy Exclusion For Contract Claims Does Not Apply To The
        General Convention's Attempt Wrongly To Enforce The By-Laws.

Despite substantial pre-suit correspondence regarding coverage in which Great

American expressed its coverage position in detail, Great American for the first time

raises the novel – and strained – argument that the policy's exclusion for contract claims

applies because the by-laws constitute a contract between the Church and its members,

which the General Convention was allegedly trying to enforce. (Opp. at 14) Great

American's argument grossly distorts the purpose of the policy exclusion for claims

arising out of contract disputes. The exclusion obviously applies to traditional contracts

where there is an exchange of consideration and an expectation of some performance, not

by-laws that are designed merely as procedural guidelines to order the internal affairs of an organization. Indeed, there is no Massachusetts case law supporting Great American's argument that an insurance exclusion for breach of contract claims applies to a by-law claim, especially one brought by an outside entity.

Moreover, the argument urged by Great American would not lead to a reasonable or appropriate interpretation of this exclusion. Under contract law, one is not considered liable for breach of by-laws, though one may be liable under tort law for breach of one's fiduciary duty to uphold the by-laws. But that tort claim would not fall within this breach of contract exclusion. It would be unreasonable to expand the scope of this exclusion to encompass by-law disputes. See Ruggiero Ambulance Serv. Inc. v. Nat'l Grange Mut. Ins. Co., 430 Mass. 794, 798, 724 N.E. 2d 295, 299 (2000) (court should "consider what an objectively reasonable insured, reading the relevant policy language, would expect to be covered.")

Finally, and perhaps most significantly, the exclusion cannot sensibly apply here. The by-law at issue requires the Church to "cease to exist" before its property allocation provision applies. The Church has not ceased to exist and the suit against the Church itself demonstrates that fact.[4] Hence, the exclusion, which only applies to claims against the Church for alleged contract liability, could not plausibly apply to a by-law provision that does not even come into force until the Church is defunct.

---

[4] It is noteworthy to remember on this point that the Superior Court held that the by-law on its face requires the Church to cease to exist and that the Church obviously has not done so and, therefore, the Superior Court dismissed as a matter of law the General Convention's claims arising from its (incorrect) interpretation of the by-law.

IV.    The Exclusion For Alleged Wrongful Conduct Cannot Be Imputed To The Church And, Therefore, Great American Is Not Released From Its Duty To Defend Since Massachusetts Does Not Recognize Apportionment Of Claims.

Great American argues that it has no duty to defend the claims brought by Plaintiffs in the Federal and State Lawsuits against Messrs. MacKenzie and Kennedy because those claims allege wrongful conduct by these two and are allegedly excluded from coverage by the wrongful conduct exclusion. (See Pls.' L.R. 56.1 Statement, Ex. 1, Section IV.A.) Even if Messrs. Kennedy and MacKenzie had engaged in any such conduct – which they did not – Great American would still be required to defend the Church and Bostonview because the wrongful conduct exclusion expressly states that "the Wrongful Act of an Insured Person shall not be imputed to any other Insured Person for the purpose of determining the applicability of this exclusion." Id. Also, Great American would still be required to defend the Church and Bostonview from claims brought against them alone, namely, Counts IV and V in the Federal Lawsuit and Counts I and IV of the Amended Complaint in the State Lawsuit.

In Massachusetts, where an insurer has a duty to defend one claim among many brought against an insured, the insurer must defend the entire lawsuit against its insured. (See Insureds' original Memorandum, at 21, citing cases) Great American does not dispute that this rule against apportionment applies here. Therefore, even if the wrongful conduct exclusion applied to claims against Messrs. MacKenzie and Kennedy, which it does not, Great American would still have an obligation to defend the entire State and

Federal Lawsuits.[5]

V.    Great American Had Duty To Defend The Attorney General's Action.

Great American raises two arguments that allegedly relieve the insurer of its duty

to defend the Attorney General's Action. Both arguments fail.

A.    The CID, On Its Own And As Part Of The Broader Action Which
Resulted In The Complaint and Consent Judgment, Was A
Covered Claim.

Great American argues that the CID was not a covered "Claim." That argument

fails as a matter of law, as the CID was part and parcel of the one action by the Attorney

General which resulted in the Consent Judgment. It also fails to recognize the reality that

the CID was no less a lawsuit to the Insureds than the Federal or State Lawsuits, because

both involved discovery, compulsory process, adherence to Court authority, and the risk

of civil liability or penalty imposed by the Court. The Church was forced to respond at

great expense to meet its legal obligations to the Attorney General and, eventually,

negotiate a settlement in the form of the Consent Judgment. Nothing about the filing of

the Complaint and Consent Judgment to end the process converted the issuance of the

CID as the first step in that process into anything other than the commencement of a

Claim within the meaning of the Policy.

Even if the CID were viewed as a separate and distinct legal action from the

subsequent filing of the Complaint and Consent Judgment, it would still constitute a

"Claim" that obligated Great American to defend. The Policy defines a claim to include

---

[5] The out-of-state cases cited by Great American do not apply because in those cases *all* the claims against
the insured were covered by a wrongful conduct exclusion, so apportionment was not an issue, nor was it
discussed. See Steadfast Insur. Co. v. Stroock & Stroock Lavan LLP, 277 F.Supp. 2d 245 (S.D.N.Y.
2003); Brown & Lacounte, LLP v. Westport Ins. Co., 307 F.3d 660 (7th Cir. 2002); Davis v. Home Ins. Co.,
1995 WL 380133 (S.D.N.Y. 1995).

"any proceedings initiated against the Insured … before … any governmental body which is legally authorized to render an enforceable judgment or order for money damages or other relief against such Insured." (Pls.' L.R. 56.1 Statement, Ex. 1, Section III.K.)  The first prong is satisfied as the Attorney General's Action was a "proceeding initiated against the Insured" in court.  The CID authorizing statute provides that:

> The attorney general, whenever he believes that charitable funds have not been or are not being applied to charitable purposes or that breaches of trust have been or are being committed in the administration of a public charity, **may conduct an investigation upon application to and with the approval of a judge of the trial court.**

Mass. Gen. Laws, ch. 12, § 8H (emphasis supplied).  Hence, the CID was unquestionably a legal action that had to be and was commenced before a Massachusetts trial court.

The second prong was also met because the trial court was authorized to impose "other relief."  By statute, the Suffolk Superior Court, which authorized the Attorney General's investigative action, was authorized and required to assess a civil penalty upon the Church in the amount of up to five thousand dollars if the Church had not complied with the Attorney General's CID.  Mass. Gen. Laws, ch. 12, § 8H.  Thus, the Attorney General's CID constituted a "Claim" insofar as it was a proceeding brought against the Church in a court which was authorized to render an order for "other relief" -- a $5,000 civil penalty if the Church refused to comply.

This is distinguishable from the one case relied on by Great American: Center for Blood Research, Inc. v. Coregis Insurance Co., 305 F.3d 38 (1st Cir. 2002).  In Coregis, the First Circuit held that an investigative subpoena issued by the United States Attorney for the District of Massachusetts pursuant to 18 U.S.C. § 3486, was not an insured "claim," defined in the policy at issue in that case as "any judicial or administrative

proceeding in which any INSURED(S) may be subjected to a binding adjudication of liability for damages or other relief." The First Circuit explained that the § 3486 subpoena was initiated by the United States Attorney without judicial involvement and that to enforce the subpoena, the United States Attorney was required to institute a separate proceeding "before a judge rather than an assistant United States attorney." Id. at 43. Hence, the First Circuit determined that § 3486 subpoena was not a covered "claim" under the Coregis policy.

Here, by contrast, the Attorney General was only authorized to commence its investigative proceeding "upon application to and with the approval of a judge of the [Massachusetts] trial court," M.G.L. ch. 12, § 8H, and that court would have been required to impose a monetary civil penalty upon the Church if it had not complied with the CID. See M.G.L. ch. 12, § 8I. These circumstances are entirely different from Coregis since the Attorney General here did commence a judicial proceeding to obtain the CID and could have obtained "other relief" against the Church without a separate judicial proceeding if the Church had not complied. Under these circumstances, an insured party such as the Church, reading the Great American policy and the applicable statute governing an Attorney General investigation, would have a reasonable expectation that the Great American policy would require Great American to provide coverage.[6]

Great American, therefore, had a duty to defend the CID on its own or as part of the broader legal action which resulted in the Complaint and Consent Judgment.

---

[6] The Insureds reject Great American's contention that there would be no duty to defend but for the Attorney General's filing the civil complaint and the entry of the Consent Judgment. (Opp. at 18) As noted above, the Attorney General's initiating the CID proceeding before the Superior Court, which had the authority to impose a civil penalty upon the Church for non-compliance, constituted a "Claim" which Great American had the duty to defend.

B.    Alleged Late Notice Of Claim Is Irrelevant Because Great American Was Not Prejudiced.

Great American also argues that it had no duty to defend the Attorney General Action because the Insureds did not give notice of the Attorney General's lawsuit until several months after it was concluded. Massachusetts courts, however, have eschewed such "technical forfeitures" and held that late notice is not a bar to an insurer's duty to defend unless the insurer can establish that it has been prejudiced by the late notice. See, e.g., Wyman-Gordon Co. v. Liberty Mut. Fire Ins. Co., 2000 Mass. Super. LEXIS 286, *16-17 (July 14, 2000) (attached hereto at **Exhibit A)**. Great American has not even hinted at any prejudice, nor could it as Great American has disclaimed on the merits any obligation to defend the Attorney General Action. Thus, even if Great American had been given early notice, Great American still would have disclaimed coverage.

VI.    Great American Clearly Violated M.G.L. c. 93A and c. 176D.

Great American's refusal to provide a defense or to provide any funds for that defense for well over a year when Great American's obligation to defend is unambiguous clearly violates M.G.L. c. 93A and c. 176D. Great American admitted that it had a duty to defend the State Lawsuit in its coverage letter to the Insureds' counsel, dated December 15, 2004. (Pls.' L.R. 56.1 Statement, Ex. 13) This was an ordinary response to a demand letter, not a settlement communication. Hence, it is binding on Great American. Moreover, in that letter, Great American acknowledged that the Insured v. Insured exclusion did not apply as some of the claims in the Amended Complaint, including the declaratory judgment claim for the Church's property, were brought by the General Convention and not by an Insured. Great American provides no reasonable

11

rationale for reversing its position in its Opposition and for having refused to pay for any part of that defense to this point.[7]

In addition, Great American cannot plausibly distinguish the Complaint in the Federal Lawsuit from the Amended Complaint in the State Lawsuit. The key portions of these pleadings for purposes of insurance coverage, namely the declaratory judgment claim for the Church's property, are identical. Where Great American had an acknowledged obligation to provide a defense to the State Lawsuit, it had the same clear obligation to defend against the Federal Lawsuit. There could not be a clearer example of an insurer unreasonably fighting coverage and putting its insured to the additional burden of litigating to recover its insurance funds. This violates c. 176D and c. 93A.

## Conclusion

For the reasons stated above and in the Memorandum in Support of their Motion for Summary Judgment, Plaintiffs request that the Court allow their Motion for Summary Judgment in its entirety and deny Great American's Cross-Motion for Summary Judgment in its entirety.

---

[7] Great American's insistence on the Insureds' executing an "Interim Funding and Reservation of Rights Agreement" before it would pay any of the Insureds' defense costs was unreasonable as Great American reserved its rights to challenge its defense obligations and, if that challenge were successful, Paragraph 3 of the proposed Agreement would have required the Insureds to repay any monies provided to the Insureds for their defense. (See Pls' L.R. 56.1 Statement, Ex. 15)

Respectfully submitted,

BOSTON SOCIETY OF THE NEW
JERUSALEM, INCORPORATED,
BOSTONVIEW CORPORATION,
EDWARD MACKENZIE, and
THOMAS KENNEDY,

By their attorneys,


/s/ Nicholas B. Carter
Howard M. Cooper (BBO #543842)
Nicholas B. Carter (BBO #561147)
Philip H. Graeter (BBO #645316)
TODD & WELD LLP
28 State Street, 31st Floor
Boston, MA 02109
(617) 720-2626

Dated: September 13, 2005