UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BOSTON SOCIETY OF THE NEW JERUSALEM, INCORPORATED, BOSTONVIEW CORPORATION, EDWARD MACKENZIE, and THOMAS KENNEDY,<br><br>        Plaintiffs,<br><br>v.<br><br>GREAT AMERICAN INSURANCE COMPANY,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) C. A. NO. 05-10494WGY<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### DEFENDANT'S ASSENTED-TO MOTION TO FILE
### REPLY MEMORANDUM IN SUPPORT OF
### CROSS MOTION FOR SUMMARY JUDGMENT

Defendant, Great American Insurance Company ("Great American"), respectfully moves with plaintiffs' assent, pursuant to Local Rule 7.1(B)(3), for leave to leave to submit the attached Reply Memorandum in support of its cross motion for summary judgment. As grounds for this request, Great American relies on the following:

1.     On September 13, 2005, the parties filed cross motions for summary judgment regarding their respective claims and defenses in this coverage dispute. Pursuant to the parties' agreed upon briefing schedule, plaintiffs included a Reply Memorandum in support of their motion for summary judgment at that time, on the understanding that Great American would have an opportunity to submit a Reply Memorandum in support of its cross motion before a hearing on the cross motions. The parties took that approach so that the filing of the cross motion submissions would not be delayed pending a decision by Great American on the question of whether to submit a reply. The hearing on the parties' cross summary judgment motions is scheduled for November 15, 2005.

2. After filing their cross motions for summary judgment, the parties focused their efforts on discussing whether to attempt to resolve their dispute through mediation. The parties have agreed to proceed to mediation on November 9 before Thomas Maffei, Griesinger, Tighe & Maffei LLP. As requested, the parties have furnished their summary judgment submissions to the mediator, and Great American has advised the mediator of its intent to submit a Reply Memorandum in advance of the mediation.

3. In the event that mediation efforts prove unsuccessful, Great American respectfully submits that consideration of its Reply Memorandum would assist the Court in deciding the issues presented by the parties' cross motion.

WHEREFORE, Great American respectfully requests leave to file the attached Reply Memorandum in support of its cross motion for summary judgment.

Dated: November 7, 2005                    Respectfully submitted,

                                           GREAT AMERICAN INSURANCE COMPANY

                                           _____
                                           Barbara A. O'Donnell BBO# 544458
                                           ROBINSON & COLE LLP
                                           One Boston Place
                                           Boston, MA  02108-4404
                                           (617) 557-5900

**Of Counsel:**

Peter F. Lovato
Ellen Jenkins
BOUNDAS SKARZYNSKI WALSH & BLACK, LLC
200 East Randolph Drive, Suite 7200
Chicago IL 60601
(312) 946-4200
(312) 946-4272 (fax)

ASSENTED TO:

BOSTON SOCIETY OF
THE NEW JERUSALEM, INC., et al.

By its Counsel,

*/s/ Nicholas Carter (BH)*
Nicholas B. Carter BBO#561147
Todd & Weld LLP
28 State Street
Boston, MA 02109

## CERTIFICATE OF COMPLIANCE WITH RULE 7.1(A)(2)

I certify that I conferred with counsel for plaintiffs and gained their consent to this motion.

*/s/ Barbara O'Donnell*
Barbara O'Donnell

## CERTIFICATE OF SERVICE

I hereby certify that on this ___ day of November 2005, I have served the foregoing document upon all parties to this action by sending a copy by first class mail, postage prepaid, to plaintiffs' counsel of record in this action:

Nicholas B. Carter, Esq.
Todd & Weld LLP
28 State Street
Boston, MA 02109

*/s/ Barbara O'Donnell*
Barbara O'Donnell

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BOSTON SOCIETY OF THE NEW JERUSALEM, INCORPORATED, BOSTONVIEW CORPORATION, EDWARD MACKENZIE, and THOMAS KENNEDY,<br><br>    Plaintiffs and Counterdefendants,<br><br>v.<br><br>GREAT AMERICAN INSURANCE COMPANY,<br><br>    Defendant and Counterplaintiff. | CIVIL ACTION NO.<br>05-CV-10494-WGY |

**GREAT AMERICAN INSURANCE COMPANY'S REPLY IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

The overarching question presented by the parties' cross-motions for summary judgment is whether Great American had a duty to defend the Insureds in three underlying matters: two lawsuits by former Church member George Chapin and others asserting a variety of tort and RICO claims and seeking to enforce certain Church bylaws; and an investigation by the Massachusetts Attorney General into possible misuse of Church assets.[1] In opposing Great American's motion, the Insureds do not argue that some disputed issue of material fact precludes summary judgment in Great American's favor. Rather, the Insureds offer different interpretations of the Policy provisions in issue and advocate entry of summary judgment in *their* favor.

The Insureds first contend, for example, that the Insured versus Insured Exclusion does

---

[1] Unless otherwise indicated, capitalized terms used in this Reply have the same meaning ascribed to them in Great American Insurance Company's Memorandum in Opposition to Plaintiffs' Motion for Partial Summary Judgment and In Support of its Cross-Motion for Summary Judgment.

not apply because Count IV of the Chapin Federal Lawsuit and Count I of the Chapin State Lawsuit—the bylaw enforcement claim upon which the Insureds exclusively focus—was brought "by" the General Convention, which is not an Insured. This argument is of no moment, however, since Great American's position is not that the Insured versus Insured Exclusion applies because the General Convention is an Insured. Rather, the Exclusion applies because the General Convention (and others) brought the claim "for the benefit of" the Church. As their opposition reveals, the Insureds still fail to appreciate that a claim to enforce an entity's bylaw is, by definition, a claim brought for the entity's benefit, regardless of what the bylaw may require. Moreover, given the requirements of the particular bylaw they sought to enforce, it is apparent that the Chapin Plaintiffs brought Count IV and Count I not only for the benefit of the Church, but also for the benefit of the entity that would have succeeded to the interest of the Church had the claim come to judgment in their favor.

The Insureds also resist application of the Policy's Contract Exclusion to the Chapin Plaintiffs' bylaw claims, insisting that the Exclusion was "obviously" intended to accomplish something other than what its plain language would suggest. In Massachusetts, however, an entity's bylaws constitute a contract between the entity and its members, and the Exclusion is worded broadly, encompassing all types of contracts. Consequently, Great American could have no duty defend either of the claims alleging a breach of the Church's bylaws.

As for the Illegal Profit, Fraud and Criminal Acts Exclusion, the Insureds argue only that, under the Exclusion, the wrongful acts of Kennedy and MacKenzie (if any) cannot be imputed to the Church or Bostonview. This argument is curious given that Great American has not invoked that Exclusion with respect to any of the counts asserted against the Church and Bostonview. It is also clearly wrong, given that the Exclusion only bars imputation of one Insured Person's

wrongdoing to another "Insured Person." Neither the Church nor Bostonview is an "Insured Person" under the Policy.

Citing Mass. Gen. Laws, ch. 12 §§ 8H & 8I, the Insureds continue to insist that the Attorney General's investigation commenced by the issuance of the CID in November 2003 was a "Claim" that Great American had a duty to defend. Those statutes, however, refute the Insureds' argument because they show that the court approving the issuance of the CID *did not* have authority to render an enforceable judgment or order for money damages or other relief—something the "Claim" definition plainly requires. Great American did acknowledge coverage for the action later brought by the Attorney General and resolved by the Consent Judgment.

Finally, in connection with their bad faith claims, the Insureds contend that Great American is bound by its earlier "admission" of a duty to defend the Chapin State Lawsuit. As the undisputed facts show, however, Great American never admitted such a duty to defend. While Great American did offer to pay some of the Insureds' defense costs incurred in the Chapin State Lawsuit, it did so only in an effort to avoid coverage litigation and notwithstanding its multiple coverage defenses. As a matter of law, such an effort cannot constitute bad faith.

## II. ARGUMENT

A. Great American Had No Duty To Defend The Two Chapin Lawsuits

   1. Standard of Review

In their opposition, the Insureds say little about the analytical approach appropriate for determining whether an insurer has a duty to defend under Massachusetts law. From their arguments, however, it is apparent that the Insureds believe that the duty depends largely, if not exclusively, on the merits of the claim at issue. For example, in challenging the application of the Insured versus Insured Exclusion to Count IV of the Chapin Federal Lawsuit and Count I of

the Chapin State Lawsuit, the Insureds argue that former Church member George Chapin, himself an Insured under the Policy, could not have been a party to those Counts because he did not have standing to sue for enforcement of the Church's bylaws. (Plaintiffs' Reply to Defendant Great American Insurance Company's Opposition to Summary Judgment and Opposition to its Cross-Motion for Summary Judgment ("Opp.") at 3) The Insured versus Insured Exclusion, however, bars coverage for *any* claim brought either by an Insured or for the benefit of the Church. An Insured's standing to sue, *vel non,* has no bearing on whether the provision applies.

Indeed, under Massachusetts law, neither an insurer nor a court may assume that a claim lacks merit when determining whether a duty to defend exists. Instead, "'the process is one of envisaging what kinds of losses may be proved as lying within the range of the allegations of the complaint, and then seeing whether any such loss fits the expectation of protective insurance reasonably generated by the terms of the policy.'" Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co., 788 N.E.2d 522, 530-31 (Mass. 2003) (quoting Sterilite Corp. v. Continental Cas. Co., 458 N.E.2d 338 (Mass. App. Ct. 1984)). In other words, under the Massachusetts test, a court is to assume that the allegations against the insured are true and that the claimant is entitled to the relief it seeks, and then consider whether any judgment rendered in favor of the claimant on any of its claims would be eligible for coverage. See Liberty Mut. Ins. Co. v. Metropolitan Life Ins. Co., 260 F.3d 54, 66 (1st Cir. 2001) (Massachusetts law) ("The duty to defend, . . . , is derivative; it requires that the claim of the plaintiff in the underlying suit—*whether valid or not*—seek damages for some injury that is arguably covered by the policy.") (Emphasis added). Where there is a potential for a covered judgment, the insurer must defend; where there is no potential for a covered judgment, the insurer need not defend. See id. ("If such a suit seeks on its

face to impose a liability *excluded* from coverage . . . , then liability is not insured against and there is not even an arguable obligation to defend.").

Following that approach in this case leads to one inescapable conclusion: Great American had no duty to defend either of the two underlying private lawsuits.

### 2. The Insured Versus Insured Exclusion Applies to Count IV of the Chapin Federal Lawsuit and Count I of the Chapin State Lawsuit

With respect to the two Chapin lawsuits, the Insureds' theory of coverage is quite narrow. Although the Chapin Plaintiffs' complaints included numerous theories of liability, the Insureds focus on just one: the claim to enforce the Church bylaw requiring that, in the event the Church ceased to exist, all of its funds and holdings be transferred to the General Convention and held in escrow pending the establishment of a new Swedenborgian Church in Boston. Because Great American had a duty to defend *that* claim, the Insureds argue, it had a duty to defend *all* claims asserted in both lawsuits. By so framing their argument, the Insureds have essentially conceded that, other than that bylaw claim, there was no claim in either of the two lawsuits that could have resulted in a judgment covered by the Policy.

The Insured versus Insured Exclusion excludes coverage for any Claim made against any Insured:

> by, or for the benefit of, or at the behest of the Organization[2] or a Subsidiary or any entity which controls, is controlled by, or is under common control with the Organization or a Subsidiary, or any person or entity which succeeds to the interest of the Organization or a Subsidiary.

(Defendant Great American Insurance Company's Local Rule 56.1 Statement in Support of Its Cross-Motion for Summary Judgment ("Def.'s LR 56.1 Statement") ¶ 20) In their opposition, the Insureds first insist that this Exclusion does not apply to Count IV and Count I because those Counts were brought "by" the General Convention, which is not an Insured. (Opp. at 2) This is

---

[2] The "Organization" includes the Church and Bostonview.

a red herring. In moving for summary judgment, Great American did not argue that the Exclusion applies because the General Convention is an Insured.[3]

Rather, Great American's position is that the Insured versus Insured Exclusion applies because the General Convention (and the other Chapin Plaintiffs) brought the bylaw claim "for the benefit of" the Church. In asserting that claim, the Chapin Plaintiffs' theory was that the Church "ceased to exist" when it disaffiliated from the General Convention, and that the disputed bylaw required the transfer of all Church assets to the General Convention pending the establishment of a new church. The Insureds are adamant that that claim could not have been "for the benefit of" the Church because, had it succeeded, the Church would have been divested of its assets.

The Insureds have missed the point. Massachusetts law counsels that, in assessing whether Great American had a duty to defend the bylaw claim, the Court is to assume both that the bylaw meant what the Chapin Plaintiffs said it meant and that the Chapin Plaintiffs were entitled to the relief they sought. Once those essential assumptions are made, there can be no argument that the bylaw claim was not "for the benefit of" the Church because the claim's very premise was that the Church desired—indeed, mandated in its own bylaws—that it be divested of its assets in favor a successor church in the event of its disaffiliation. By definition, a claim to enforce an entity's bylaw is a claim brought on behalf of that entity, *regardless of what the bylaw may provide*. Moreover, that the state court ultimately disagreed with the Chapin Plaintiffs' interpretation of the bylaw does not alter the fact that, in bringing the claim, they were

---

[3] The Insureds also insist that the General Convention brought the bylaw claims alone, and that Chapin, an Insured under the Policy, was not a party to them. (Opp. 2-3) As Great American established in its opening memorandum (on page 11), however, the first paragraph of Count IV and Count I, the footnotes to those paragraphs, and the general prayers for relief at the end of the underlying pleadings all establish that Chapin was indeed a party to those claims. Even if he were not, however, his lack of participation would not end the inquiry, as the Insured versus Insured Exclusion also bars coverage for claims brought—no matter by whom—"for the benefit of" the Church.

attempting to effectuate what they thought was the will of the Church. That they were mistaken does not somehow render the claim covered.

Furthermore, given the dictates of the bylaw in question, it is manifest that the Chapin Plaintiffs also brought that claim for the benefit of the entity that would have succeeded to the interests of the Church had the claim been successful. The Insureds do not quarrel with that point. Rather, they argue that the "obvious" intent of the Exclusion's successor language is "to make sure the exclusion applies if the Insured is succeeded legally by another entity, which shares an identical legal interest with the Insured." (Opp. at 4) The best evidence of what the parties to any contract intended, however, lies in the language upon which they agreed, and, in this case, there is nothing in the Insured versus Insured Exclusion to support the narrow interpretation the Insureds ascribe to it. In this case, the "interest" of the Church over which the Chapin Plaintiffs and the Insureds were fighting was all of the Church's "funds and holdings," which the Chapin Plaintiffs sought to have transferred, initially, to the General Convention and, later, to a new affiliated Swedenborgian church to be formed in Boston. Given their theory of recovery and the relief they were seeking, the Chapin Plaintiffs most certainly did bring their bylaw claim for the benefit of the entity that would have succeeded to the interest of the Church had the claim resulted in a judgment in their favor.

For these reasons, the Insured versus Insured Exclusion relieved Great American of any duty to defend.

3.   The Contract Exclusion Applies to the Bylaw Enforcement Claims

The Insureds also resist application of the Policy's Contract Exclusion to the underlying bylaw enforcement claims, arguing that Great American's position "grossly distorts" the

Exclusion's purpose. (Opp. at 6)[4] According to the Insureds, the Contract Exclusion "obviously" applies only to "traditional" contracts where there is an exchange of consideration and an expectation of performance, and not to an organization's bylaws. (Id. at 6-7)

The problem with this argument is that the Contract Exclusion does not contain language limiting its application to "traditional" or any other particular type of contract, and it certainly contains no exception for corporate bylaws. Rather, the Exclusion is very broad, eliminating coverage for any Claim "for any actual or alleged liability of any Insured under *any* contract or agreement, express or implied, written or oral . . . ." (Def.'s LR 56.1 Statement ¶ 21) Furthermore, Massachusetts law is clear: an organization's bylaws constitute a contract between the organization and its members. Jesse v. Boynton, 361 N.E.2d 1267, 1273 (Mass. 1977). Accordingly, claims alleging that an organization breached its bylaws—like those asserted in Counts IV and V of the Chapin Federal Lawsuit and Counts I and IV of the Chapin State Lawsuit—necessarily implicate the Exclusion.

The Insureds also argue that it would be "unreasonable" and "inappropriate" to apply the Contract Exclusion to the Chapin Plaintiffs' bylaw claims. Without citation to any authority, the Insureds state that, under contract law, one is not considered liable for breach of bylaws, although one may be liable under tort law for breach of one's fiduciary duty to uphold bylaws. (Opp. at 6) This proposition, even if accurate, ignores that the Chapin Plaintiffs did not bring their bylaw claims as breach of fiduciary duty claims against Church officials. Rather, the Chapin Plaintiffs expressly alleged that the *Church* had breached *its* contractual obligations set forth in the bylaws. Furthermore, that the Chapin Plaintiffs did not seek monetary damages from

---

[4] In addition, the Insureds suggest that Great American waived its right to disclaim coverage on the basis of the Contract Exclusion because its coverage correspondence did not discuss the provision. (Opp. at 6) As the evidence shows, however, Great American repeatedly advised the Insureds that it was proceeding under a *full* reservation of *all* of its rights, remedies and defenses under the Policy and the law, including to the right to raise additional coverage issues. There was no waiver.

the Church does not mean that they did not attempt to hold the Church "liable" under the bylaws. Indeed they did attempt to hold the Church liable under the bylaws—only, instead of damages, the Chapin Plaintiffs sought what amounted to an order of specific performance.

The harmony between what the Insureds argue is the purpose of the Contract Exclusion and the Exclusion's application in these circumstances becomes even more apparent when, as the Massachusetts test requires, one assumes that the Chapin Plaintiffs had prevailed on their bylaw claim seeking consignment of the Church's assets to the General Convention. Do the Insureds seriously contend that, in the face of the Contract Exclusion, Great American would have been required to reimburse the Church for the value of its assets—that is, after those assets had been transferred to the General Convention in accordance with an obligation voluntarily undertaken by the Church in its own bylaws?

As manifested by its language, the purpose of the Contract Exclusion is to eliminate coverage, including defense costs coverage, for any Claim alleging that an Insured failed to fulfill an obligation imposed by *any* contract. Given the breadth of the Exclusion and the clarity of Massachusetts law, the Insureds could not have had a reasonable expectation of coverage under the Policy for the bylaw enforcement claims.

    4.    <u>Under the Illegal Profit, Fraud and Criminal Acts Exclusion, the Wrongful Acts of an Insured Person May Be Imputed to the Insured Entities</u>

As Great American established in its opening memorandum (on pages 14-16), the Illegal Profit, Fraud and Criminal Acts Exclusion relieved Great American of any duty to defend Kennedy and MacKenzie against those causes of action in the underlying complaints requiring proof that they gained an illegal profit, committed a fraud, or engaged in criminal activity. In their opposition, the Insureds do not challenge Great American's application of the Exclusion to those several causes of action. Rather, the Insureds argue that the Exclusion forbids the

imputation of Kennedy's and MacKenzie's wrongful conduct (if any) to the Church and Bostonview in order to deny them a defense to the bylaw claims. According to the Insureds, the Exclusion's supposed prohibition against imputation matters here because Massachusetts law does not recognize the "apportionment of claims," which means that an insurer must defend an entire lawsuit so long as at least one claim is potentially covered. Citing this principle, the Insureds contend that Great American had a duty to defend both of the underlying private lawsuits in their entireties.

That the Insureds make this argument is puzzling given that Great American has not attempted to impute wrongdoing among any Insureds or even invoked the Illegal Profit, Fraud and Criminal Acts Exclusion as a bar to coverage for the two bylaw counts—the only claims asserted against the Church and Bostonview. (Other Exclusions eliminate coverage for those claims.) In any event, the Insureds' premise is flawed. The Exclusion states:

> This Policy does not apply to any Claim made against any Insured:
>
>> brought about or contributed to in fact by: (1) any Insured gaining any profit, advantage, or remuneration to which the Insured was not legally entitled; or (2) the fraudulent, dishonest or criminal acts of any Insured; *however, the Wrongful Act of an Insured Person shall not be imputed to any other Insured Person for the purpose of determining the applicability of this exclusion.*

(Def.'s LR 56.1 Statement ¶ 22) (Emphasis added) Although the Insureds may not have noticed, "Insured Persons" is a defined Policy term that means "all persons who were, now are, or shall be directors, trustees, officers, employees, volunteers or staff members of the Organization or its Subsidiaries, including any executive board members and committee members whether salaried or not." (Id. ¶ 17) The Church and Bostonview are not "Insured Persons," and, therefore, Great American could impute Kennedy and MacKenzie's Wrongful Acts to them for purposes of the Exclusion. The Insureds' contrary argument is demonstrably incorrect.

B.   <u>Great American Had No Duty To Defend The Attorney General Investigation</u>

The Insureds continue to insist that Great American had a duty to defend the Massachusetts Attorney General's investigation commenced by the issuance of the CID in November 2003. The Insureds' theory is that the CID was a "Claim" under the Policy because 1) it constituted a "proceeding initiated against an Insured"; and 2) it was brought before a court that was "legally authorized to render an enforceable . . . order for . . . other relief." (Opp. at 8-9)

The proceeding to which the Insureds are referring was not, however, "initiated *against* an Insured." Commenced under Mass. Gen. Laws ch. 12 § 8H, the sole purpose of that proceeding was for the Attorney General to secure court approval before issuing the CID *to*—not *against*—the Church. Stated differently, that proceeding enabled the Attorney General to begin investigating whether there might be grounds upon which he might *later* initiate a proceeding *against* an Insured, which he ultimately did.

Moreover, contrary to the Insureds' assertion, the court that approved the CID was *not* "legally authorized to render an enforceable judgment or order for money damages or other relief." Under Mass. Gen. Laws ch. 12 § 8I, the Attorney General may, in the event a person fails to comply with the requirements of an investigative demand obtained under Mass. Gen. Laws. ch. 12 § 8H, petition a court for enforcement and assessment of a civil penalty against such person. In order to secure such relief, however, the Attorney General must file a new proceeding in the superior court of the county in which the non-complying person resides or has his principal place of business. Mass. Gen. Laws ch. 12 § 8I. That requirement makes it clear that the enforcement/penalty proceeding must be instituted separately, and is discrete from the initial proceeding authorizing the Attorney General's investigation. Thus, the court that approves an investigation under Mass. Gen. Laws ch. 12 § 8H *does not* have the authority to

- 11 -

issue any enforceable order for relief under Mass. Gen. Laws ch.12 § 8I. Given the statutory framework, the proceeding brought by the Attorney General to secure court approval for the CID issued to the Church did not fit the Policy's definition of "Claim" and, consequently, did not give rise to a duty to defend.

Toward the end of their opposition (on page 11), the Insureds state that Great American refused to defend the Attorney General's investigation on the alternative ground of late notice. They then argue that their late notice is irrelevant here because Great American suffered no prejudice as a result of the delay. That argument is but a straw man, however, as Great American has not denied coverage on the basis of late notice. Rather, Great American mentioned the delay in its motion papers because it suggests—strongly—that for many months the Insureds themselves did not consider the investigation a "Claim."

C.    Great American Did Not Commit Any Unfair Claims Settlement Practices

The Insureds conclude their opposition by arguing, once again, that Great American violated Mass. Gen. Laws ch. 93A and ch. 176D. (Opp. at 11-12). This time, the Insureds' premise is that, in a letter dated December 15, 2004—Exhibit 13 to the Insureds' Local Rule 56.1 Statement in Support of Their Motion for Summary Judgment—Great American admitted that it had a duty to defend the Chapin State Lawsuit, and that that admission is binding on Great American. (Id. at 11) According to the Insureds, that letter was "an ordinary response to a demand letter, not a settlement communication." (Id.)

That statement is pure fiction—which is not surprising seeing as it comes from parties who've described Great American's position as both "Orwellian" and "Dr. Seuss-like." To be sure, Great American's December 15, 2004 letter was an out-of-the-ordinary reaction to an overt threat of litigation. As the Insureds neglect to mention in their opposition, Great American wrote

that letter in response to correspondence—dated December 9, 2004, and sent via certified mail—in which the Insureds proclaimed that they would sue Great American in contract and under Chapter 176D and Chapter 93A if it did not immediately acknowledge coverage for both Chapin Lawsuits. (See Exhibit 12 to the Insureds Local Rule 56.1 Statement) Thus, when Great American offered to pay some of the Costs of Defense incurred in the Chapin State Lawsuit, it was attempting to avoid the coverage litigation the Insureds had just threatened to bring.

Furthermore, Great American did not admit in its December 15, 2004 letter that it had a duty to defend the Chapin State Lawsuit, or even offer to pay all the defense costs incurred by the Insureds in the Chapin State Lawsuit. Rather, in an effort to compromise the dispute, Great American offered to pay the costs incurred in defense of the Chapin State Lawsuit after the Church had engaged its new counsel. That offer, however, was subject to a full reservation of rights and was expressly conditioned on the Insureds' execution of an interim funding agreement.[5] What the Insureds also fail to mention is that the interim funding agreement Great American proposed included yet another full reservation of rights and the following statement: "Any payments made by [Great American] in accordance with this Agreement shall not be, and shall not be deemed to be, an admission by [Great American] of any liability under the Policy." (See Exhibit 15 to Plaintiffs' LR 56.1 Statement—attached Interim Funding and Reservation of Rights Agreement, p. 3, subparagraph 7) Thus, the Insureds' assertion that Great American admitted that it had a duty to defend is patently false.

Nor did Great American acknowledge in its December 15, 2004 letter that the Insured versus Insured Exclusion did not apply to the Chapin State Lawsuit. What that letter actually

---

[5] The interim funding agreement referenced in Great American's December 15, 2004 letter was sent with Great American's January 7, 2005 letter and specified that Great American's advancement of defense costs incurred in the Chapin State Lawsuit would be limited to those amounts billed by Todd & Weld. (See Exhibit 15 to Plaintiffs' LR 56.1 Statement—attached Interim Funding and Reservation of Rights Agreement, p. 2, subparagraph 1)

stated was: "[I]t *appears* that the allegations brought by the National and State organizations, as amended in the state complaint, *may* no longer fall within the parameters of the Insured vs. Insured exclusion." (Emphasis added.) Furthermore, any distinction drawn between the Chapin Federal Lawsuit and the Chapin State Lawsuit in that correspondence was for the sole—and salutary—purpose of facilitating settlement.

The Insureds, however, rejected Great American's overtures without even making a counteroffer, and this coverage litigation ensued. That Great American attempted to settle the dispute by offering to pay part of a Loss it reasonably believed it did not owe is not the sort of inimical conduct the Massachusetts statutes target. See Boston Symphony Orchestra, Inc. v. Commercial Union Ins. Co., 545 N.E.2d 1156, 1160 (Mass. 1989) (explaining that liability under chapter 93A flows from immoral, unethical, or oppressive conduct by an insurer). This is especially true here, given that Great American made its offer of compromise without waiving its multiple coverage defenses that were and that remain, at the very least, plausible. See id. (holding that an insurer, as a matter of law, does not engage in unfair or deceptive acts where it relies upon a plausible, although ultimately incorrect, interpretation of its policy).

## IV. CONCLUSION

In sum, the Insureds' opposition presents no facts or legal arguments that would preclude entry of summary judgment in Great American's favor.

Dated: November 7, 2005

Respectfully submitted,

GREAT AMERICAN INSURANCE COMPANY

Barbara A. O'Donnell BBO# 544458
ROBINSON & COLE LLP
One Boston Place
Boston, MA 02108-4404
(617) 557-5900

Of Counsel:

Peter F. Lovato III
Ellen D. Jenkins
BOUNDAS SKARZYNSKI WALSH & BLACK, LLC
200 East Randolph Drive, Suite 7200
Chicago IL 60601
(312) 946-4200
(312) 946-4272 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of November 2005, I have served the foregoing document upon all parties to this action by sending a copy by first class mail, postage prepaid, to plaintiffs' counsel of record in his action:

> Nicholas B. Carter, Esq.
> Todd & Weld LLP
> 28 State Street
> Boston, MA 02109